ELAINE A. CONNORS, administratrix,[1] vs. HOWARD
JOHNSON COMPANY.

No. 89-P-507.

Suffolk. April 9, 1990. - May 16, 1991.

Present: ARMSTRONG, KASS, & SMITH, JJ.

Trade Secret. Contract, Performance and breach. Trust, Breach of trust.
Practice, Civil, Costs.

In an action for breach of contract, breach of trust, and misappropriation
of trade secrets, the judge correctly ordered that judgment be entered
for the defendant notwithstanding the jury's verdict, where there was
no evidence to show that the defendant's permissive right to use the
plaintiff's ice cream formulas was subject to any written or oral agree-
ment, restriction or condition at the times in issue. [604-607]
The judge in a civil action properly ordered the plaintiff to pay the defend-
ant's costs, including a substantial sum for the fees of two expert wit-
nesses. [607]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 21, 1981.

The case was tried before Barbara J. Rouse, J.

Stephen S. Young (Joshua C. Krumholz with him) for the
plaintiff.

Laurie S. Gill (Francis C. Lynch with her) for the
defendant.

ARMSTRONG, J. Thirteen years after the death of Paul H.
Beckner, who had been employed as a quality control man-
ager at the Howard Johnson Company's ice cream manufac-
turing plant in Brockton, his administratrix brought this ac-
tion for damages for breach of contract, breach of trust, and
misappropriation of trade secrets. The theory of the action
was that Beckner, who had been employed by another ice

---

[1] Of the estate of Paul H. Beckner.

cream maker, Lewis Sherry, in the 1940s and had then gone unsuccessfully into business for himself, was hired by the defendant in 1952 to take advantage of his superior formulas for ice creams; that they entered into a written contract in 1958, giving the defendant proprietary rights to ice cream flavors and formulas developed by Beckner for the defendant (but not for those he developed earlier); that the defendant continued to use the early Beckner formulas after his death in 1968, which constituted a breach of contract and a misappropriation of trade secrets; and that the defendant's secret use of the early formulas after Beckner's death, and its failure to compensate his estate for such use, constituted a breach of fiduciary duty to Beckner's estate. After a jury returned verdicts for the estate totaling $1,250,000,[2] the judge entered a judgment for the defendant notwithstanding the verdict, from which judgment the plaintiff has appealed.

At the foundation of the plaintiff's various theories of liability was an assumption that the defendant's right to use the formulas that Beckner brought with him when he began his employment with the defendant terminated at Beckner's death. There was in the evidence no basis for that assumption. We can assume, with the plaintiff, that the formulas for making the four flavors at issue (see note 2) could be the subject of a trade secret, compare *Peggy Lawton Kitchens, Inc.* v. *Hogan*, 18 Mass. App. Ct. 937 (1984), and that the evidence supported findings that the defendant switched to

---

[2]In answers to special questions, the jury found that Beckner's formulas for vanilla, chocolate, strawberry, and coffee ice creams were Beckner's trade secrets and that the defendant's continued use of those formulas after Beckner's death constituted a misappropriation, for which it awarded $500,000. Possibly inconsistently, the jury also found that Beckner did not possess written formulas for those flavors that the defendant used without authority after his death, and that the defendant was not in breach of its written contract with Beckner by using those formulas without compensation after his death. Despite the last finding, the jury found that the defendant was in breach of an implied contract of good faith and fair dealing arising from the 1958 employment contract by using the formulas after his death. For that breach the jury awarded $750,000. The plaintiff took the position that these awards should be aggregated. The defendant argued that they were simply inconsistent verdicts. The judge was not required to decide because she vacated both verdicts.

Beckner's formulas for manufacturing the flavors in question after Beckner was hired in 1952 and continued to use them to the time of trial. But the defendant's use of the formulas was obviously consensual and of right, and nothing in the record shows that the right was the subject of restriction or condition. The evidence that the formulas were kept as a guarded secret, shared only by Beckner and a small group of authorized personnel, may tend to show that the formulas were guarded from discovery and use by competitors but not that they were guarded by Beckner from use by the defendant.

In *Chadwick* v. *Covell*, 151 Mass. 190, 191 (1890), it was said of medicines formulated and marketed by a Dr. Spencer that he "had no exclusive right to use of his formulas. His only right was to prevent any one from obtaining or using them through a breach of trust or contract. Any one who came honestly to the knowledge of them could use them, without Dr. Spencer's permission and against his will." See also *Wireless Specialty Apparatus Co.* v. *Mica Condenser Co.*, 239 Mass. 158, 165 (1921)("The fact that an invention is patentable does not compel the taking out of a patent, nor prevent the person entitled to it from keeping it secret, nor bar him from equitable relief against those disclosing its existence and details in violation of trust and confidence, nor as against those who obtain knowledge through such violation with notice and purpose to make use thereof. The fundamental requirement for relief is a violation of trust and confidence. Any one who gets the knowledge honestly can use it provided he is not restrained by the relationship under which he acquired it. [Citations omitted]"). The principle was reaffirmed more recently in *Jet Spray Cooler, Inc.* v. *Crampton*, 377 Mass. 159, 165 (1979): "The essence of an action for the wrongful use of trade secrets is the breach of the duty not to disclose or to use without permission confidential information acquired from another. [Citations omitted.] See generally Restatement of Torts § 757 (1939). . . ."[3]

---

[3]Section 757 reads: "One who discloses or uses another's trade secret, without a privilege to do so, is liable to the other if (a) he discovered the

There was no evidence of any agreement, oral or written, between the defendant and Beckner in 1952 concerning the use of the formulas. The plaintiff may be correct in contending that the evidence warranted a finding that the defendant's purpose in hiring Beckner was to use those formulas and to employ Beckner's skill in devising new or improved formulas; but there is no showing that the defendant violated any obligation it had assumed under that oral employment contract. In 1958 Beckner signed a five-year employment agreement with the defendant which provided that "any and all inventions, processes, methods, formulae, or other improvements created or developed by the Employee [i.e., Beckner], in connection with his employment, shall belong to the Employer, shall be fully disclosed to the proper officers of the Employer and shall be transferred to the Employer upon request."[4] The effect of this clause would have been to restrict Beckner's use of formulas he developed while in the defendant's employ. It cannot be read as restricting the defendant's use of Beckner's early formulas after his employment should terminate. The evidence does not show that Beckner ever sought to impose such a restriction. "One who possesses a trade secret and wishes to protect it must act to preserve its secrecy." *USM Corp.* v. *Marson Fastener Corp.*, 379 Mass. 90, 97 (1979), and cases cited. His formulas may have been a trade secret from the rest of the world but not from the defendant. The judge correctly ordered that judg-

---

secret by improper means, or (b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him, or (c) he learned the secret from a third person with notice of the facts that it was a secret and that the third person discovered it by improper means or that the third person's disclosure of it was otherwise a breach of his duty to the other, or (d) he learned the secret with notice of the facts that it was a secret and that its disclosure was made to him by mistake."

[4] This was apparently a standard form contract used by the defendant (two identical contracts with other employees appear in the record), with blank spaces for name of employee, the date of signing, and the annual salary. Beckner's contract was renewed once, for a second five-year period. The defendant gave notice of its intention not to renew it for a third five-year period, but Beckner, who had been ill for several years, died before the second contract period ended.

ment be entered for the defendant notwithstanding the jury's verdict.

The plaintiff appealed also from an order that she pay the defendant's costs in the amount of $12,802.19, including a substantial sum for the fees of two expert witnesses. The plaintiff does not challenge the authority of the court to tax such fees, as opposed to the statutory witness fees taxable under G. L. c. 262, § 29. See *Goulet* v. *Whitin Mach. Works, Inc.*, 399 Mass. 547, 555 (1987), where taxing such fees seems to have been approved. Compare *Linthicum* v. *Archambault*, 379 Mass. 381, 389 (1979)(expert witness fee may be taxed as costs in actions under G. L. c. 93A, which represents a statutory exception to the usual rule that a litigant must bear his own expenses). See also *Creed* v. *Apog*, 377 Mass. 522, 524-526 (1979), relative to taxing bonding costs, and Mass.R.Civ.P. 54(e), 382 Mass. 829 (1981), relative to taxing deposition costs.

Rather, the appeal is put on the basis that the expert witness fees should not have been taxed as costs because the judge did not rely on their testimony in rendering judgment for the defendant. The judge's reliance on another ground does not preclude recovery of the costs in question. A litigant will often prudently offer several alternative grounds for decision, not knowing which may succeed and which may fail. If the testimony of the expert witnesses were of marginal relevance or excessive in scope or cost, the judge should of course disallow some or all of the costs; but their testimony in this case was clearly germane, and the judge exercised her discretion to reduce the requested fees substantially. Assuming the authority existed, there was no error.

*Judgment affirmed.*

*Order taxing costs affirmed.*