In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1354

FAIL-SAFE, LLC,

*Plaintiff-Appellant*,

*v.*

A.O. SMITH CORPORATION,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:08-cv-00310-JPS—**J.P. Stadtmueller**, *Judge*.

ARGUED DECEMBER 1, 2011—DECIDED MARCH 29, 2012

Before EASTERBROOK, *Chief Judge,* CUDAHY, *Circuit Judge,* and PRATT, *District Judge*.[*]

CUDAHY, *Circuit Judge*. This case is about whether a plaintiff can sustain a trade secret or unjust enrichment claim when that plaintiff fails to take any protective measures to safeguard its proprietary information.

---

[*] The Honorable Tanya Walton Pratt, District Judge for the Southern District of Indiana, is sitting by designation.

Business relationships do not always develop under formulaic circumstances. But where one company fails to take any protective steps to shield its proprietary information, it cannot then expect the law to protect it when the relationship sours. For this reason, we affirm.

This case involves two companies, Fail-Safe, LLC (FS) and A.O. Smith, Corp. (AOS) and their efforts to develop a pump motor for pool suction entrapment prevention technology. Pool suction entrapment occurs when the suction created by a pool drain traps swimmers. This problem has prompted an industry-wide effort to develop drain entrapment release devices.

FS manufactures anti-entrapment devices for artificial pool drains. AOS manufactures motors for pool and spa pumps, and has also been developing anti-entrapment technology since late 2000. In November 2000, one of AOS's engineers, William Mehlhorn, attended a trade show where he first saw FS's suction entrapment technology. Also during this time, Mike Metzler, AOS's marketing director, became aware of FS's products through an advertisement in a trade magazine. Intrigued by FS's Suction-Safe Pump, he and FS's founder, Joseph Cohen, soon began initial conversations about entering into a development project whereby AOS would develop a pump motor for FS's pool suction entrapment prevention technology. The exact nature of these talks is unclear, but it is undisputed that no formal agreement materialized, nor did the parties discuss confidentiality.

Cohen and Metzler continued to have a series of conversations through the fall of 2002. In November 2002,

Cohen wrote a formal letter to AOS expressing interest in having AOS develop a pump motor for FS with various specific features. The letter did not mention confidentiality. In response, Metzler suggested a meeting date to begin development and stated that he "look[ed] forward to setting a meeting date and beginning the process." After months of correspondence, in early March 2003, Cohen sent a letter broadly describing the project along with the test results from a previous unsuccessful design by FS and FS's desired features for the motor. Neither the letter nor any correspondence during that time mentioned confidentiality.

Later that month, Cohen traveled to Milwaukee to meet with Metzler and several AOS engineers. During their meeting, Cohen signed AOS's standard one-way confidentiality agreement, which stated that FS was a supplier of research consulting services. FS did not similarly require AOS to enter into a confidentiality agreement despite having demanded such confidentiality agreements in various other prior business relationships. After signing the agreement with AOS, Cohen proceeded to share what features he thought would be important in the proposed device and details about how to test the device. Not once during the meeting with AOS did Cohen identify the information he provided as confidential.

Following the meeting, Cohen and Mehlhorn communicated periodically to discuss technical standards and deadlines for the project. Cohen shared test results from a previous pump design and details on how to properly

test the developing AOS motor with a special test stand. During these conversations, confidentiality was never discussed.

In September 2003, almost one year after beginning working with AOS, Cohen wrote to AOS executive Steve O'Brien summarizing his view of the relationship between the two companies up until that point. The letter stated that if AOS were interested in marketing the pump as a life-saving device, FS would support that decision. Cohen concluded with a proposal for a formal agreement to move forward and commercialize the motor, recognizing that no formal agreement relating to the motor currently existed between the two companies.

Cohen's proposal produced no practical results and no agreement was ever reached between the two companies. In January 2004, however, Cohen sent a letter to seventeen different pump manufacturers claiming to have solved the suction entrapment problem in a joint effort with AOS. O'Brien responded by letter to the same pump manufacturers to correct FS's inaccurate reference to a joint relationship between the two companies. O'Brien also sent a letter to Cohen restating the position taken in his letter to the industry and accusing Cohen of breaching AOS's confidentiality agreement.

The dialogue became contentious, but the two companies continued to correspond through the spring of 2004. No resolution was made of their relationship by a formal agreement or by acknowledging intellectual property rights, and correspondence eventually stopped by

October 2004. Later, AOS introduced two pump motors that FS claims incorporated its trade secrets: the "eMod" and the "Guardian," both offered for sale in May 2006. Nearly two years later, in April 2008, FS filed this suit for misappropriation of trade secrets and unjust enrichment under Wisconsin law.

The district court granted summary judgment in favor of AOS on both claims. The district court found that the misappropriation of trade secrets claim was barred under the three-year statute of limitations. It further found, in the alternative, that FS failed to take reasonable steps to protect the secrecy of its claimed trade secret, and thus failed on the merits. FS's voluntary disclosure of its information, the court found, also defeated its unjust enrichment claim. FS timely appealed. As a final judgment from the district court, we note jurisdiction under 28 U.S.C. § 1291.

We review the district court's judgment on the pleadings and its grant of summary judgment de novo. *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007) ("We review a district court's ruling on a Rule 12(c) motion *de novo*."); *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 941 (7th Cir. 2011) (grant of summary judgment reviewed de novo). We construe facts favorably to the nonmoving party and grant the nonmoving party "all reasonable inferences" in its favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

FS makes four arguments on appeal. Primarily, FS argues that the district court erred in granting summary judgment on its misappropriation of trade secret

claim because there was ample evidence to find that a confidential relationship existed and its disclosure of secret information in that relationship was reasonable. Secondly, FS claims that the district court erroneously added a "wrongfulness" element to the requirements for Wisconsin unjust enrichment claims. Finally, FS contends that the district court abused its discretion in applying quantum meruit to FS's unjust enrichment claims and excluding FS's damages experts.

We agree with the district court that FS failed to take reasonable precautions to protect its trade secrets. This failure vitiates FS's claim of misappropriation. Further, because the material FS conveyed to AOS was without any intellectual property protection or contractual agreement for confidentiality, AOS could not profit unjustly from the use of that voluntarily disclosed information. For this reason, FS's unjust enrichment claim must also fail. The district court initially found, however, that the misappropriation suit was barred by laches, since FS knew or should have discovered AOS's initial alleged misappropriation more than three years before filing suit. Because we affirm on the merits, we need not address the district court's analysis of laches. For the same reason, the related issues of correct damages model and exclusion of FS's expert witnesses are mooted.[1]

---

[1] Nor must we decide on whether the information was in the public domain. As we explain below, FS failed to take any steps to protect its trade secrets.

1.

FS failed to take reasonable protective measures for its claimed trade secret under the circumstances, and thus cannot claim trade secret protection. To qualify as a trade secret under Wisconsin law, the claimed trade secret—that is, the proprietary information—must be the "subject of efforts to maintain its secrecy that are reasonable under the circumstances." Wis. Stat. § 134.90 (2011). "[F]ailure to take reasonable steps to prevent gratuitous disclosure" of the alleged trade secret forfeits any protection. *Bondpro Corp. v. Siemens Power Generation, Inc.*, 463 F.3d 702, 708 (7th Cir. 2006). Though absolute secrecy is not required, *see Rockwell Graphics Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174, 177 (7th Cir. 1991), "one who claims a trade secret must exercise eternal vigilance in protecting its confidentiality." *RTE Corp. v. Coatings, Inc.*, 267 N.W.2d 226, 233 (Wis. 1978). Even "[t]he existence of a confidentiality agreement is not always enough." *ECT Int'l, Inc. v. Zwerlein*, 597 N.W.2d 479, 484 (Wis. Ct. App. 1999).

We agree with the district court that FS failed to take reasonable steps under the circumstances to maintain the secrecy required for trade secret protection. Indeed, FS failed to take *any* steps to protect its information. None of the information provided by FS to AOS was marked confidential, nor did FS make it known that it expected this information to remain confidential. Rather, FS volunteered information and willingly cooperated with AOS. Indeed, FS signed AOS's one-way confidentiality agreement, yet failed to obtain similar

protection despite having protected itself with similar confidentiality agreements in the past. If the information FS provided was confidential, then FS should have requested reciprocal confidentiality in its communications and exchanges with AOS. FS failed to make a modicum of effort to protect the confidentiality of its information, a failure that was not reasonable under these circumstances.

On appeal, FS relies on this court's decision in *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714 (7th Cir. 2003), to claim that summary judgment, based on the reasonableness of FS's belief that it was in a confidential relationship, was inappropriate. FS maintains that it reasonably believed it had entered into a joint venture with AOS and, as a result, AOS was under a duty of confidentiality. If such a relationship existed, FS maintains, its lack of independent precautionary measures was reasonable because the duty of confidentiality protected the information shared in the relationship. *Learning Curve*, however, is readily distinguishable from the present case because *Learning Curve* centered on the existence of an oral confidentiality agreement between unsophisticated parties that was adopted before any information was exchanged. *Id.* at 717.

Moreover, in *Learning Curve* we noted that the plaintiffs were a small business, consisting of only two people. *Id.* at 724. There, we found that Illinois courts have "recognized on several occasions that the expectations for ensuring secrecy are different for small companies than for large companies." *Id.* (citing *Jackson v. Hammer*, 653

N.E.2d 809, 815 (Ill. App. Ct. 1995) ("The determination of what steps are reasonably necessary to protect information is different for a large company than for a small one.")). The reasonableness of the plaintiff's steps in *Learning Curve* to protect its trade secrets was held to a looser standard, yet even there, that unsophisticated business used a confidentiality agreement (even though oral). *Id.*

Here, there is no evidence that a confidential relationship existed. The parties never concluded a binding agreement before disclosing information. FS's mere subjective belief that it had entered into a joint venture does not warrant protection. Even if this court were to agree with FS that cooperation alone may impose a duty of confidentiality between two sophisticated parties, the degree of cooperation in this case is not so great as to indicate the parties could reasonably believe they were in a joint venture with reciprocal confidentiality. AOS and FS discussed potentially creating a product and FS, perhaps wary of alienating AOS, did not press the issue of confidentiality or inquire as to reciprocal duties. Moreover, when FS attempted to formalize the agreement more than one year after they first began working together, the working relationship fell apart. When FS unilaterally announced in a letter to members of its industry that it was in a development relationship with AOS, AOS immediately repudiated FS's claim. Indeed, perhaps in an effort to motivate AOS to come to the bargaining table, FS reminded AOS that the two companies had no formal relationship.

Even assuming some sort of informal relationship existed that hinted at confidentiality, FS still failed to take any steps to maintain its secrecy, which was unreasonable under these circumstances. No information was ever marked confidential. Nor did FS take any steps to protect its claimed proprietary information, contractually or otherwise. FS volunteered its information to AOS. And, unlike in *Learning Curve*, the topic of confidentiality was never even broached by FS, a sophisticated party familiar with such agreements. AOS, with its one-way confidentiality agreement, was the only party that took any protective steps. Under these circumstances, FS's efforts (or lack thereof) to maintain secrecy of its claimed trade secrets were not reasonable.

We agree with the district court that this is an "extreme case." FS failed to take any precautionary measures to protect its claimed trade secrets. Therefore, FS's actions were not reasonable under these circumstances and cannot sustain FS's misappropriation of trade secrets claim.

## II.

Because we find that FS's trade secret claim fails, it follows that FS's unjust enrichment claim must also fail. FS willingly volunteered information to AOS, and thus there is nothing unjust about AOS's later use of, and benefit from, that information.

Under Wisconsin law, an unjust enrichment claim requires a plaintiff prove that: (1) a benefit was "conferred

upon the defendant by the plaintiff"; (2) there was an "appreciation by the defendant of the fact of such a benefit"; and (3) there was "acceptance and retention of the benefit by the defendant under circumstances such that it would be inequitable to retain the benefit without payment of the value thereof." *Seegers v. Sprague*, 236 N.W.2d 227, 230 (Wis. 1975). In the context of trade secrets, "Wisconsin law denies recovery for unjust enrichment if all the defendant has done is use (to his profit) an idea of the plaintiff that is not a trade secret." *Confold Pac., Inc. v. Polaris Indus.*, 433 F.3d 952, 957 (7th Cir. 2006) (citing *Abbott Labs v. Norse Chemical Corp.*, 147 N.W.2d 529, 541 (Wis. 1967) ("[If] no trade secrets were appropriated by the defendants, there was no unjust enrichment . . .")). Simply put, one cannot steal free advice.

On appeal, FS argues that the district court erred by adding a "wrongfulness" or fault element to Wisconsin unjust enrichment law. True, fault is not an element. But the district court did not add a fault element; the district was merely looking for some independent protection that was violated to make AOS's enrichment *unjust* or *inequitable* under the third element. The district court made clear in its analysis that "fault indeed does not need to exist in order for a plaintiff to assert an unjust enrichment claim." Instead, the court's discussion of cases, some of which involved wrongfulness, focused on the inequitable retention of a benefit by a defendant. Wrongfulness is not a necessary condition, but it is sufficient to show that circumstances warrant that, because of defendant's conduct, she must compensate the plaintiff for the value of the benefit conferred. *See Abbott*

*Labs*, 147 N.W.2d at 541 ("Unjust enrichment . . . requires a wrongful taking or appropriation of others' property to one's own use.").

Far from creating a new wrongfulness requirement, the district court correctly noted that inequitable retention must come from an independent violation of FS's rights under some "body of law." *Confold Pac., Inc.*, 433 F.3d at 959. Such a violation may arise from a defendant's use of information protected by an intellectual property right, a confidential relationship or a contract. But none of those protections are present in this case. Because FS and AOS were not in a confidential relationship, because FS never sought to safeguard its information through contract and because AOS did not misappropriate any of FS's trade secrets, this court cannot, in equity, grant relief based on AOS's conduct.

We agree with the district court that FS "courted [its] own disaster" by failing to take any protective measures. *RTE Corp.*, 267 N.W.2d at 233. Because AOS's use of FS's information did not violate some independent protection, AOS could not profit unjustly from the information FS disclosed.

For the foregoing reasons, the judgment is AFFIRMED.