# United States Court of Appeals
## For the First Circuit

No. 23-1822

ANALOG TECHNOLOGIES, INC.; DR. GANG LIU,

Plaintiffs, Appellants,

v.

ANALOG DEVICES, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Montecalvo, Lynch, and Rikelman,
<u>Circuit Judges</u>.

Howard B. D'Amico, with whom Howard B. D'Amico, P.C. was on brief, for appellants.
Alexander Paul Ott, with whom McDermott Will & Emery LLP and Annabel Rodriguez were on brief, for appellee.

June 18, 2024

**LYNCH**, **CIRCUIT JUDGE**.  Appellants Analog Technologies, Inc. ("ATI") and its CEO Dr. Gang Liu brought this federal action alleging that appellee Analog Devices, Inc. ("ADI") is liable for trade secret misappropriation under federal and Massachusetts law because appellants took "reasonable measures" to maintain the secrecy of development materials ATI had shared with ADI, and ADI violated its obligation to limit its use of those materials.  18 U.S.C. § 1839(3)(A), (5)(B); Mass. Gen. Laws ch. 93, § 42(2)(ii), (4)(ii).

The district court granted ADI's motion to dismiss the claim, holding that, under the clear terms of a written agreement among the parties, any restrictions on ADI's use of the materials had expired.  See Analog Techs., Inc. v. Analog Devices, Inc., No. 21-cv-11334, 2023 WL 5833122, at *1, *4 (D. Mass. Sept. 8, 2023).  We affirm.

## I.

"When reviewing a motion to dismiss, we recount the underlying facts as alleged in the complaint," Shash v. Biogen, Inc., 84 F.4th 1, 6 (1st Cir. 2023), but "disregard any conclusory allegations," Ponsa-Rabell v. Santander Sec. LLC, 35 F.4th 26, 30 n.2 (1st Cir. 2022).

On November 18, 2000, ATI and ADI entered into a "License and Development Agreement" ("2000 agreement").  Under this agreement, ATI agreed to share technological developments related

to thermo-electric cooler controllers ("TEC controllers") with ADI so that ADI could manufacture and sell products using that technology. ATI agreed not to license use of these developments to other parties. The agreement required ADI to pay ATI $240,000, as well as royalty payments based on the total sales amount of products sold.

The 2000 agreement, in a section titled "Intellectual Property," included a provision stating:

> The parties agree that any information, technical data or know-how which is furnished to the other in written or tangible form by either party in connection with this Agreement and which is clearly marked as "Proprietary Information" or "Confidential" will be maintained by the receiving party in confidence. The obligations of confidentiality and/or non-disclosure set forth in this Section shall survive the expiration or termination of this Agreement for a period of five (5) years from the date of expiry or termination. Confidential information will not be used by the receiving party except to fulfill the receiving party's rights and obligations under this Agreement.

(Emphasis added.) The 2000 agreement also included a sunset clause stating that "[t]he term of this Agreement, unless sooner terminated, shall be for a period of five (5) years from the Product silicon release date," which the agreement specified to be on December 20, 2001.

Starting in late 2000, and continuing through 2004, ATI provided ADI with development materials, which included ATI's

- 3 -

proprietary and trade secret information related to integrated circuit designs for TEC controllers. These materials were marked as confidential by ATI, and were incorporated into ADI's products. Appellants have not shared these development materials with any other parties and ATI has relied upon non-disclosure and employment agreements in order to protect this information from disclosure to other parties.

ATI alleges that sometime in 2013, ADI ceased paying royalties to ATI despite continuing to use ATI's development materials in the sale of its products.

The parties subsequently negotiated a new agreement. In 2015, ATI and Liu entered into a "Release and License Agreement" with ADI ("2015 agreement"). The agreement stated that it would "supersede[] and replace[] the License and Development Agreement dated November 18, 2000[,] between ATI and ADI." In a section titled "Release," the agreement provided:

> Gang Liu and ATI each hereby releases ADI . . . from any and all claims, causes of action, demands, damages, and expenses . . . of any kind or nature that either ever had or now has, known or unknown, against [ADI], including without limitation all claims arising out of or relating to the [2000 agreement] and/or the parties' business transactions.
>
> In consideration of this Agreement and the release herein, ADI shall pay ATI $18,212.76 . . . . For the avoidance of doubt, this release shall survive any termination of the

- 4 -

Agreement no matter the reason or circumstances of such termination.

In a section titled "Exclusive License," the 2015 agreement stated:

> Gang Liu and ATI each grant to ADI an exclusive worldwide license to make, have made, reproduce, modify, enhance, prepare derivative works of, use, market, sell, have sold, and otherwise distribute any and all hardware, software, designs, documentation, know-how, or other materials provided by Gang Liu and/or ATI to ADI . . . , any products incorporating [such development materials], and any patent, copyright, mask work, trade secret, know how, or other proprietary rights associated with or relating to such [development materials or products] including, but not limited to US Patent No. 6,486,643. Gang Liu and ATI agree that they will not license or disclose the Development Materials or Intellectual Property to anyone besides ADI, nor will Gang Liu or ATI use the Development Materials or Intellectual Property to compete with ADI.

The 2015 agreement required ADI to pay ATI a royalty on the sales revenue of products sold. The agreement was "governed and construed in accordance with the Laws of the Commonwealth of Massachusetts."

In May 2021, counsel for ADI notified Liu that ADI was electing to terminate the 2015 agreement. Appellants, through counsel, stated then that such termination would be invalid because ADI had not alleged a breach of the agreement. ADI's counsel responded that the termination was valid under a provision of the 2015 agreement allowing ADI to terminate the agreement for any

- 5 -

reason; ADI stated that it had "terminated this agreement for at least the reason that the patents underlying this agreement have expired."  In July 2021, appellants reiterated their position that ADI's termination of the agreement was invalid, a position they have abandoned in this appeal.

## II.

On August 17, 2021, appellants brought this action against ADI in the U.S. District Court for the District of Massachusetts.  The amended complaint asserts nine counts alleging that the termination of the 2015 agreement was invalid; that ADI breached the 2015 agreement; that ADI fraudulently induced appellants into entering the 2015 agreement; and that in the alternative, if the 2015 agreement was properly terminated, then ADI misappropriated appellants' trade secrets following said termination.  Appellants argue in particular that, if the 2015 agreement was terminated, then ADI is no longer authorized to use appellants' development materials that were shared between 2000 and 2004.  Appellants allege that ADI's continued use of these materials for sale and marketing of its products is in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b), (Count VI) and the Massachusetts Uniform Trade Secrets Act ("MUTSA"), Mass. Gen. Laws ch. 93, §§ 42, 42A-42G (Count VIII).  Appellants request monetary and injunctive relief.

On February 22, 2023, ADI filed a motion for judgment on

the pleadings as to the counts asserting the termination and alleged breach of the 2015 agreement, and a motion to dismiss as to the remaining counts. On September 8, 2023, the court granted ADI's motions. See Analog Techs., 2023 WL 5833122, at *1. As to appellants' trade misappropriation claims, the court found that "there were no trade secrets under the 2000 License Agreement still in existence to have been misappropriated in 2021." Id. at *4.

Appellants timely appeal the court's order as to the trade secret misappropriation counts, Counts VI and VIII, allowing the motion to dismiss. Appellants do not appeal the remainder of the court's order, and they have conceded the court's findings that the 2015 agreement was properly terminated and that appellants were not fraudulently induced to enter into the 2015 agreement.

**III.**

**A.**

"We review the district court's grant of the . . . motion to dismiss de novo and may affirm on any ground supported by the record." Cowels v. FBI, 936 F.3d 62, 66 (1st Cir. 2019). To survive a motion to dismiss, "[t]he complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Douglas v. Hirshon, 63 F.4th 49, 55 (1st Cir. 2023) (internal quotation omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

"The DTSA . . . provide[s] protections for individuals and entities claiming misappropriation of their trade secrets." Allstate Ins. Co. v. Fougere, 79 F.4th 172, 187 (1st Cir. 2023). Under the DTSA, a trade secret is any "form[] and type[] of financial, business, scientific, technical, economic, or engineering information" where the owner of the information has "taken reasonable measures to keep such information secret."[1] 18 U.S.C. § 1839(3)(A). A trade secret has been misappropriated if, among other possibilities, it was disclosed or used

> without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret.

Id. § 1839(5)(B).

Massachusetts law defines trade secret misappropriation similarly. Under MUTSA, information constitutes a trade secret only if "at the time of the alleged misappropriation [it] was the

---

[1] A trade secret under the DTSA must also "derive[] independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3)(B).

subject of efforts that were reasonable under the circumstances . . . to protect against it being acquired, disclosed or used without the consent of the person properly asserting rights therein . . . ."[2] Mass. Gen. Laws ch. 93, § 42(4)(ii). MUTSA defines misappropriation, among other possibilities, as

> an act of disclosure or of use of a trade secret of another without that person's express or implied consent by a person who . . . at the time of the actor's disclosure or use, knew or had reason to know that the actor's knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to limit its acquisition, disclosure, or use.

Id. § 42(2)(ii).

The district court held that "Massachusetts trade secret law is nearly equivalent to the DTSA," Analog Techs., Inc., 2023 WL 5833122, at *4 (quoting Allscripts Healthcare LLC v. DR/Decision Res., LLC, 386 F. Supp. 3d 89, 94 (D. Mass. 2019)), and did not distinguish its MUTSA and DTSA analyses. "Because neither party challenges this framing," nor do the parties make separate arguments under the federal and state statutes, we "will draw no

---

[2] MUTSA also requires that, for information to constitute a trade secret, it must have, "at the time of the alleged misappropriation, provided economic advantage, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, others who might obtain economic advantage from its acquisition, disclosure or use." Mass. Gen. Laws ch. 93, § 42(4)(i).

distinction between the district court's misappropriation findings under the DTSA and [MUTSA], affirming or reversing them in tandem." Allstate Ins. Co., 79 F.4th at 187-88.

**B.**

We conclude that, on the facts alleged in the amended complaint, ADI has not misappropriated ATI's development materials. Appellants shared these materials with ADI in accordance with the 2000 agreement, under which the confidentiality obligations expired in 2011. Even if, as appellants argue, the 2000 agreement additionally imposed non-expiring restrictions on ADI's use of the development materials, the 2015 agreement released ADI from any remaining use restrictions. Furthermore, the 2015 agreement did not impose any additional use restrictions that survived termination of that agreement. Hence, following termination of the 2015 agreement, ADI's continuing use of the development materials has not breached any duty to limit said use. See Allstate Ins. Co., 79 F.4th at 192-93, 195 (holding that defendant misappropriated trade secrets under federal and Massachusetts law because defendant's use of the information was in violation of a confidentiality agreement); Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc., 68 F.4th 792, 805-06 (2d Cir. 2023) (holding that defendant misappropriated plaintiff's trade secrets in violation of DTSA because defendant's use of the information was not authorized under

- 10 -

the terms of an agreement between the parties); Fail-Safe, LLC v. A.O. Smith Corp., 674 F.3d 889, 892-93 (7th Cir. 2012) (holding that there was not trade secret misappropriation under Wisconsin law where the information was shared without a "contractual agreement for confidentiality"); MPAY Inc. v. Erie Custom Comput. Applications, Inc., 970 F.3d 1010, 1017-18 (8th Cir. 2020) (holding that, under DTSA, defendant was not liable for trade secret misappropriation because defendant's disclosure of the information did not "breach[ a] duty to maintain the secrecy of the [information]," and further holding that such a duty did not exist at the time of the alleged misappropriation in part because a settlement agreement between the parties negated confidentiality obligations); Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc., 895 F.3d 1304, 1314 (Fed. Cir. 2018) (holding that, because the use of trade secrets "was contractually permitted," it was "not a proper basis of liability for trade secret misappropriation"); cf. InteliClear, LLC v. ETC Global Holdings, Inc., 978 F.3d 653, 660-61 (9th Cir. 2020) (holding that a company took reasonable measures to maintain its information's secrecy under DTSA in part because it only shared information with a party who was required to keep the information "confidential 'during and after' the terms of the agreement").

We disagree with appellants' contention that the obligations imposed on ADI by the 2000 agreement were revived by

- 11 -

the 2015 agreement, thereby continuing to restrict ADI's ability to use or disclose the development materials. The 2015 agreement expressly "supersede[d] and replace[d]" the 2000 agreement, and "release[d] ADI . . . from any and all claims, causes of action, demands, damages, and expenses . . . of any kind or nature . . . arising out of or relating to the [2000 agreement]."

Appellants' argument that the 2015 agreement "required both parties to take 'reasonable steps to preserve the secrecy' of the trade secrets" is undercut by the plain language of the agreement, which merely required that "Gang Liu and ATI . . . not license or disclose the Development Materials or Intellectual Property to anyone besides ADI." There is no language in the 2015 agreement that ADI was under any obligation following termination of the agreement to maintain the secrecy of, or was to limit its use of, the development materials it obtained from ATI during the 2000 to 2004 period. See Minturn v. Monrad, 64 F.4th 9, 14 (1st Cir. 2023) (holding that under Massachusetts law, a "contract should be interpreted 'in a reasonable and practical way,' reading words that are 'plain and free from ambiguity' in their 'usual and ordinary sense'" (quoting Gen. Hosp. Corp. v. Esoterix Genetic Lab'ys, LLC, 16 F.4th 304, 308 (1st Cir 2021))); see also Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1002 (1984) ("If an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the

- 12 -

information, . . . his property right [in that trade secret] is extinguished."); Connors v. Howard Johnson Co., 571 N.E.2d 427, 429-30 (Mass. App. Ct. 1991) (holding that there was no evidence to support a trade misappropriation claim because, while the information "may have been a trade secret from the rest of the world," the plaintiff did not act to restrict the defendant's use of the information).

Appellants stretch even further and more implausibly in their argument that ADI has misappropriated the development materials because, even if ADI did not have any duty to limit its use of the materials at the time of the alleged misappropriation, such a duty did exist when the materials were acquired under the 2000 agreement. Appellants maintain that the statutory language in the DTSA and MUTSA does not require that "a duty to . . . limit the use of the trade secret" exist at the time of misappropriation. See 18 U.S.C. § 1839(5)(B)(ii)(II); Mass. Gen. Laws ch. 93, § 42(2)(ii)(B)(II).

Appellants' argument misses the mark. To start, this argument ignores other statutory text. The text of the DTSA and MUTSA states that use of a trade secret constitutes misappropriation only if said use occurred "without express or implied consent." 18 U.S.C. § 1839(5)(B); Mass. Gen. Laws ch. 93, § 42(2)(ii). We conclude that appellants consented to ADI's use of the development materials when they relinquished, under the

2015 agreement, any restrictions on such use. See Olaplex, Inc. v. L'Oréal USA, Inc., 855 Fed. Appx. 701, 709 (Fed. Cir. 2021) (holding that defendant did not misappropriate trade secrets because, under the terms of an agreement between the parties, the plaintiff "consented to that use").

If appellants' interpretation of the statutory language were to prevail, it would lead to the absurd result that a party who received a trade secret by proper means, and who did not breach any duty in using that trade secret during the time it had such a duty, could nonetheless be held liable later for trade secret misappropriation after any such duty had expired. See Aroostook Band of Micmacs v. Ryan, 484 F.3d 41, 61 (1st Cir. 2007) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with legislative purpose are available." (alteration in original) (quoting Griffin v. Oceanic Contractors, 458 U.S. 564, 575 (1982))). Moreover, appellants' interpretation has been rejected in caselaw.[3] See, e.g., MPAY Inc., 970 F.3d at 1017-18.

**IV.**

We **affirm** the district court's decision granting ADI's motion to dismiss.

---

[3] Because we conclude that ADI did not misappropriate the development materials, we do not address appellants' arguments that the district court erred in concluding that the development materials did not constitute trade secrets.

- 14 -