# United States Court of Appeals
## For the First Circuit

No. 24-1221

STEVEN C. FUSTOLO,

Plaintiff, Appellant,

v.

SELECT PORTFOLIO SERVICING, INC.; FEDERAL HOME LOAN MORTGAGE
CORPORATION, as Trustee of SCRT 2019-2,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Rikelman, Lynch, and Kayatta,
Circuit Judges.

Joe Dye Culik and Dye Culik PC on brief for appellant.
Peter F. Carr, II and Eckert Seamans Cherin & Mellott,
LLC on brief for appellees.

December 12, 2024

**LYNCH**, <u>**Circuit Judge**</u>.  Steven Fustolo appeals from the dismissal of his claims against the holder of a mortgage, Federal Home Loan Mortgage Corp. as Trustee of SCRT 2019-2 (the "Trust"), and his mortgage servicer, Select Portfolio Servicing, Inc. ("SPS").  In an attempt to avoid foreclosure on a rental investment unit he owns, Fustolo's primary claim sought a declaratory judgment that the Trust and SPS had no right to foreclose under Massachusetts law because they do not validly hold either the mortgage or the accompanying promissory note (the "Note").  Fustolo also asserted pendent state law damages claims for defamation, slander of title, unfair business practices, and violation of Massachusetts's Debt Collection Act, all of which depended on the validity of the primary allegations.  He also claimed that SPS violated Regulation X of the Real Estate Settlement Procedures Act ("RESPA"), 12 C.F.R. § 1024, in refusing to correct an allegedly incorrect valuation of the property at issue.

Because Fustolo failed to state a claim, we affirm.

## I.

When reviewing the allowance of a motion to dismiss, "'we recount the underlying facts as alleged in the complaint,' but 'disregard any conclusory allegations.'"  <u>Analog Techs., Inc.</u> v. <u>Analog Devices, Inc.</u>, 105 F.4th 13, 14 (1st Cir. 2024) (citation omitted) (first quoting <u>Shash</u> v. <u>Biogen, Inc.</u>, 84 F.4th 1, 6 (1st

Cir. 2023); then quoting Ponsa-Rabell v. Santander Sec. LLC, 35 F.4th 26, 30 n.2 (1st Cir. 2022)).

In 2009, Fustolo purchased Unit 13 at 115 Salem Street, Boston, Massachusetts, and took out a mortgage to do so. The mortgage was in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Union Capital Mortgage Business Trust ("Union Capital") and its successors and assigns, with a loan in the amount of $283,500. At the same time, Fustolo executed a promissory note to Union Capital for the same amount. Union Capital, a trust, was terminated on June 29, 2010.

In the years following Fustolo's purchase of the property, the mortgage was reassigned six times.[1] Fustolo's Complaint alleged that the First Assignment was invalid because "the original lender, Union Capital, had dissolved at the time the

---

[1] The assignments proceeded as follows.

1. On December 7, 2011, an assignment was recorded from MERS to HSBC Bank USA, N.A. (the "First Assignment").

2. On August 3, 2012, a corrective assignment was filed from MERS to HSBC Bank USA (the "Second Assignment")

3. On January 31, 2017, an assignment was recorded from HSBC Bank USA to Nationstar Mortgage LLC (the "Third Assignment").

4. On December 3, 2018, an assignment was recorded from Nationstar to SPS (the "Fourth Assignment").

5. On December 5, 2018, a corrective assignment was recorded from Nationstar to SPS (the "Fifth Assignment").

6. On August 12, 2021, an assignment was recorded from SPS to the Trust (the "Sixth Assignment").

Mortgage was assigned via the First Assignment." The Note has an allonge payable to, and indorsed in blank by, "HSBC Mortgage Corporation (USA)." The entity HSBC Mortgage Corporation (USA) never received the Note in the chain of assignments; rather, the distinct entity HSBC Bank USA did.

The Complaint also alleged that "each of the assignments of the Mortgage clearly states that all sums due related to it, i.e., the amounts due pursuant to the Note[], are being transferred," and that "[t]his means that the Mortgage assignments and the Note transfers contradict each other." In his brief before this court, Fustolo clarified that the First and Second Assignments purportedly transferred both the mortgage and the Note, but that "the remaining assignments of the Mortgage only contain language that the Mortgage was assigned without reference to a transfer of the rights of the debt related to the Mortgage and Note." The parties do not dispute that the Trust is currently in possession of the Note.

In 2013, involuntary bankruptcy proceedings were initiated against Fustolo by a different entity not a party to this case. An automatic stay went into effect pursuant to 11 U.S.C. § 362. After the stay went into effect, Appellees continued to send collection notices for the mortgage debt, filed a Servicemembers Civil Relief Act action against Fustolo in Massachusetts Land Court, and reported the mortgage account on

Fustolo's credit report. Fustolo defaulted, and on or about September 17, 2019, SPS noticed a cure date.

In 2021, Fustolo submitted a request for assistance with the defaulted mortgage loan to SPS. On April 2, 2021, SPS sent a response which included a valuation of the property between $500,000 and $510,000. Fustolo and his counsel sent SPS a letter contesting that amount and a valuation concluding that the property was worth $350,000. On June 24, 2021, SPS responded with a letter denying additional loss mitigation and stating that "a variance in the property value will not change the outcome of our decision; therefore, we will not adjust the property value."

Fustolo filed this action on December 30, 2022 in Massachusetts state court, and the Appellees removed it to federal district court. On March 20, 2023, the district court dismissed the action as to all counts except for Count II, a claim challenging the adequacy of a notice letter sent to Fustolo, which the parties later settled. The district court first determined that Counts I, IV, V, VI, and VII, the declaratory judgment and state law claims, "hinge on defendant improperly attempting to foreclose without establishing the unity of the Mortgage and the Note."[2] Fustolo v. Select Portfolio Servicing, Inc., No. 1:23-cv-

---

[2] The district court found that the claims were judicially estopped, but we have no need to discuss that ruling or Fustolo's arguments on the issue.

10033, (D. Mass. Mar. 20, 2023), ECF No. 14.  The district court held that "[w]ith respect to the Note, [Fustolo] concedes that it is indorsed in blank and currently in the possession of defendant (otherwise, defendant could not have produced it for [Fustolo])." Id.  The district court then held that Massachusetts law, including the Massachusetts Uniform Commercial Code, established that Fustolo "thus has no basis to challenge assignment of the note." Id.  As to Count III, Fustolo's RESPA claim, the district court held that it was insufficiently pled because Fustolo failed to "specify . . . which provision of [RESPA] allegedly imposes a requirement to respond to a notice of error about the valuation." Id.  Further, Fustolo "only alleges having sent one notice of error, and defendant indisputably responded to that notice with its rationale for declining to update the valuation."  Id.  The district court noted that the Complaint alleged only that "under RESPA, [SPS] 'was required to respond to, and correct, any notices of error sent by Fustolo.'"  Id.

On appeal, Fustolo argues that he "sufficiently pleads contradictions between the assignments of the Note and of the Mortgage" because the Trust does not properly hold the Note through the chain of mortgage assignments.  Fustolo also argues that the district court erred in dismissing the RESPA claim because Fustolo "sufficiently alleged that [SPS] committed an error covered by the statute, that [SPS] failed to comply with its statutory obligations

- 6 -

in responding to correct the error, and Fustolo suffered actual damages."

## II.

We review the district court's dismissal order de novo. Douglas v. Hirshon, 63 F.4th 49, 54-55 (1st Cir. 2023). "We do not credit legal labels or conclusory statements, but rather focus on the complaint's non-conclusory, non-speculative factual allegations and ask whether they plausibly narrate a claim for relief." Cheng v. Neumann, 51 F.4th 438, 443 (1st Cir. 2022).

## A.

We need not reach the question of whether Fustolo is judicially estopped from challenging the Appellees' right to foreclose because his claim to that effect fails on the merits. In Massachusetts, a party may foreclose when they hold both the mortgage and the mortgage note. Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d 1118, 1129 (Mass. 2012). Fustolo argues that the Trust does not hold the Note because of various alleged discrepancies in the chain of assignments. However, under Massachusetts law, "[t]here is no case holding that a foreclosing party must demonstrate an unbroken chain of assignments of the mortgage note."[3] LaRace v. Wells Fargo Bank, N.A., 166 N.E.3d 1025, 1037

---

[3] To the extent that Fustolo argues that the Trust cannot foreclose because the mortgage assignments sometimes did not transfer the Note as well, that argument lacks merit. "[N]othing in Massachusetts law requires a foreclosing mortgagee to

- 7 -

(Mass. App. Ct. 2021). The Supreme Judicial Court has further made clear that mortgage notes can be "transferred by indorsement and delivery between the parties." Eaton, 969 N.E.2d at 1121 n.5; see also Sullivan, 7 N.E.3d at 1119 n.16 (holding that party was noteholder where it "[wa]s in possession of the original note, endorsed in blank by WMC"); Galvin v. U.S. Bank, N.A., 852 F.3d 146, 156 (1st Cir. 2017) (noting that in Massachusetts, mortgage notes "may be transferred by indorsement and delivery"). Mass. Gen. Laws ch. 106, § 3-205(b) likewise establishes that "[w]hen indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." The parties agree that the Trust possesses the Note and that the Note was indorsed in blank, so Fustolo's allegations that the Trust does not hold the Note fail.[4]

---

demonstrate that prior holders of the record legal interest in the mortgage also held the note at the time each assigned its interest in the mortgage to the next holder in the chain." Sullivan v. Kondaur Cap. Corp., 7 N.E.3d 1113, 1119 (Mass. App. Ct. 2014).

[4] On appeal, Fustolo argues that Mass. Gen. Laws ch. 106, § 3-205(b) does not apply to the Note as a negotiable instrument because language in Paragraph 10 of the Note establishes "express condition[s] to payment" and that "rights or obligations with respect to the promise or order are stated in another writing." See Mass. Gen. Laws ch. 106, § 3-106(a), § 3-104(a). Fustolo did not plead this theory in the Complaint or otherwise present it to the district court, and he has waived it. As we have held, "[i]f any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal." Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir.

- 8 -

Fustolo's allegation that the Appellees do not hold the mortgage because "the original lender, Union Capital, had dissolved at the time [of the First Assignment]" likewise fails to state a claim. It is beyond dispute that MERS may hold and assign a legal interest in a mortgage. See, e.g., Serra v. Quantum Servicing, Corp., 747 F.3d 37, 40 (1st Cir. 2014) ("MERS may validly possess and assign a legal interest in a mortgage."); see also Haskins v. Deutsche Bank Nat'l Tr. Co., 19 N.E.3d 455, 463 (Mass. App. Ct. 2014) ("There is likewise no merit to the plaintiff's claim that MERS is without capacity to execute a valid assignment of the mortgage . . . ."). That remains true when MERS is a nominee of an original lender that has since dissolved as well as that lender's successors and assigns. See Giannasca v. Deutsche Bank Nat'l Tr. Co., 130 N.E.3d 1256, 1259 (Mass. App. Ct. 2019). Fustolo's mortgage establishes MERS as "a nominee for [Union Capital] and [Union Capital's] successors and assigns," so MERS validly assigned the mortgage despite Union Capital's dissolution. Fustolo's allegations make clear that after that First Assignment, the chain of assignments is unbroken such that the Trust holds the mortgage. See U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 53 (Mass. 2011) (holding that a party has the right to foreclose when there exists "a complete chain of assignments

_____

1992).

- 9 -

linking it to the record holder of the mortgage, or a single assignment from the record holder of the mortgage").

Fustolo's state law claims for defamation, slander of title, unfair business practices, and violation of Massachusetts's Debt Collection Act (Counts IV, V, VI, and VII) all fail because the Trust validly holds both the mortgage and the Note. These claims all feature as a key allegation that the Appellees lack the right to foreclose, and Fustolo concedes that the Appellees' right to foreclose is a "threshold issue that was determinative of the legality of Appellees' actions in furtherance of collection, i.e. Fustolo's claims for . . . defamation, slander of title, unfair business practices, and illegal debt collection."[5] Having correctly determined that the Appellees had the right to foreclose, the district court did not err in dismissing Fustolo's associated state law claims.

**B.**

The district court did not err in dismissing Fustolo's claim that SPS violated RESPA. We need not address the potential pleading defects that the district court identified because the claim fails on the merits. RESPA requires servicers to respond to a borrower's notice of error related to the servicing of a mortgage

---

[5] Fustolo did not present any argument on appeal contesting the dismissal of his remaining state law claims should we affirm the district court's holding that Appellees had the right to foreclose and has waived any such challenge.

loan. See 12 U.S.C. § 2605(e)(1). Only certain errors, which are enumerated in RESPA's corresponding implementing regulations, are "covered" by the statute. 12 C.F.R. § 1024.35. Fustolo argues that the alleged error here falls within the catchall term: "Any other error relating to the servicing of a borrower's mortgage loan." 12 C.F.R. § 1024.35(b)(11). The argument fails. The statute defines "servicing" as meaning "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

Challenges to the merits of a servicer's evaluation of a loss mitigation application do not relate to the "servicing" of the loan and so are not covered errors under RESPA. See Naimoli v. Ocwen Loan Servicing, LLC, 22 F.4th 376, 384 (2d Cir. 2022) (determining that the catchall provision unambiguously "excludes challenges to the merits of a servicer's loss mitigation determination"); see also Morgan v. Caliber Home Loans, Inc., 26 F.4th 643, 651 (4th Cir. 2022) (holding that "correspondence limited to the dispute of contractual issues that do not relate to the servicing of the loan, such as loan modification applications," are not covered under RESPA); Medrano v. Flagstar Bank, FSB, 704 F.3d 661, 667 (9th Cir. 2012) (holding that RESPA "distinguishes

between letters that relate to borrowers' disputes regarding servicing, on the one hand, and those regarding the borrower's contractual relationship with the lender, on the other" and that "challenges to the terms of the loan and mortgage documents are not disputes regarding" servicing under RESPA); MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 491 (1st Cir. 2013) ("[A]bsent an explicit provision in the mortgage contract, there is no duty to negotiate for loan modification once a mortgagor defaults." (citing Peterson v. GMAC Mortg., LLC, No. 11-11115, 2011 WL 5075613, at *6 (D. Mass. Oct. 25, 2011)). A request for mortgage assistance is a type of loss mitigation application. See Lage v. Ocwen Loan Servicing LLC, 839 F.3d 1003, 1006 (11th Cir. 2016) ("A loss mitigation application is simply a request by a borrower for any of a number of alternatives to foreclosure, known as loss mitigation options, including, among others, modification of the mortgage."); see also 12 C.F.R. § 1024.31 (defining "loss mitigation option" to mean "an alternative to foreclosure offered by the owner or assignee of a mortgage loan that is made available through the servicer to the borrower").[6]

---

[6] Fustolo argues that Naimoli, an out-of-circuit case, nevertheless saves his claims. Not so. In Naimoli, a loan servicer denied a request for a loan modification after the servicer lost certain loan documents. 22 F.4th at 379. The Second Circuit determined that the mismanagement of documents was an error falling under RESPA's catchall and that the "loss of the loan documents . . . jeopardized [the servicer's] ability to make payments to the loan's owners in the event of a foreclosure." Id.

We **affirm** the district court's dismissal of Counts I, III, IV, V, VI, and VII.

at 384.  No similar error is alleged here, and indeed, the <u>Naimoli</u> court agreed that "a loan servicer's failure to properly evaluate a borrower for a loss mitigation option is not a covered error under [RESPA]."  <u>Id.</u>