**Mihai BEFFA, dba Polaris, Plaintiff–
Appellant/Cross–Appellee,**

v.

**BANK OF THE WEST, Defendant–
·Appellee/Cross–Appellant.**

Nos. 97–15534, 97–15613.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 11, 1998.

Decided Aug. 20, 1998.

Steven G. Baird, Atkinson–Farasyn, LLP, Mountain View, California, for plaintiff-appellant/cross-appellee.

Kenneth K. Kennedy, Jr., San Jose, California, for defendant-appellee/cross-appellant.

Before: WOOD, Jr.,* HALL, and O'SCANNLAIN, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge:

In November 1993, Mihai Beffa ("Beffa"), a computer goods dealer, contracted with a Romanian company, Seltec, to provide Seltec with computer equipment. Under the terms of the contract, Beffa would ship Seltec's goods once he received payment for the order. The total cost of the order, $4,200, was to be paid by a wire funds transfer to an account Beffa maintained at the Bank of the West's ("Bank") Cupertino, California branch under the names "Mihai Beffa, Dana Beffa, dba Polaris." When the anticipated wire transfer did not show up in Beffa's account, he made several inquiries at the Cupertino branch office. Bank personnel advised Beffa each time that no wire transfer in the amount of $4,200 had been received for his account. By late January 1994, Beffa had received his monthly bank statements for November and December 1993, both of which showed that Seltec's wire transfer had not been credited to his account.

Beffa contacted Seltec several times from December 1993 to January 1994, explaining that he had not received the anticipated payment. The company assured Beffa that it had instructed its bank in Romania to wire the funds. At that time, the Romanian private banking system had only been in existence for a few years. Therefore, Beffa believed that Seltec had indeed authorized the wire transfer, but that the Romanian banking system was at fault for a breakdown in its transmission.

In fact, the Romanian system functioned perfectly. The wire transfer was made by the Romanian bank through several U.S. intermediaries, and, on December 9, 1993, the Bank's wire transfer department received the incoming transmission directed to its Cupertino branch. This transmission did not properly identify Beffa's account number, nor did it include Beffa's name. The transmission identified "Polaris" as the intended beneficiary, and the address listed for the beneficiary was the same as the address listed on Beffa's account. The Cupertino branch rejected the transfer because it lacked a correct account number and the bank representative was unable to find an account name matching the beneficiary designation. The transfer was subsequently accepted by the Bank's Walnut Creek branch because the beneficiary designation, "Polaris," exactly matched the name on an account maintained at that branch. On December 9, 1993, the Walnut Creek branch credited $4,200 to its Polaris account, which was maintained by a customer who is not a party to this suit.

In March 1995, Beffa met with Seltec personnel in Romania. At this meeting, Beffa asserts that Seltec provided him with a copy of a telex transmission from American Express Bank dated December 19, 1994, which stated that a Bank representative had confirmed that the Cupertino branch had received the funds and had credited them to the Polaris account on December 9, 1993.[1]

---

* The Honorable Harlington Wood, Jr., United States Circuit Judge for the Seventh Circuit, sitting by designation.

1. The Bank objected to Beffa's testimony regarding the telex. The district court noted this objection without ruling on the issue. Since the evidence concerning the telex does not alter our analysis, we need not address its admissibility.

Beffa showed a copy of this telex to the Bank in April 1995 and made additional inquiries regarding the wire transfer. As a result of these inquires, the Bank discovered its error and, on April 25, 1995, credited Beffa's account with the $4,200.

Beffa filed suit against the Bank in state court on November 20, 1995, alleging negligence, intentional and negligent misrepresentation, and violation of the Expedited Funds Availability Act, 12 U.S.C. § 4001–10, ("EFAA"). Beffa sought to recover lost profits since Seltec refused to do business with Beffa because of the confusion over the missing payment. The Bank removed the matter to federal court based on federal question jurisdiction. The district court granted partial summary judgment for the Bank, dismissing Beffa's EFAA and negligence claims, and remanded the two remaining state law claims to state court. On appeal, Beffa argues that the district court erred in finding that his negligence claim was preempted by EFAA and in failing to find that the statute of limitations for his EFAA claim had been tolled. The Bank cross-appeals, claiming that the district court erred in failing to extend its preemption decision to include Beffa's intentional and negligent misrepresentation claims. We affirm in part and reverse in part.

### ANALYSIS

#### A. EFAA claim

The purpose of EFAA is to provide faster availability of deposited funds. S.Rep. No. 100–19, at 25, *reprinted in* 1987 U.S.C.C.A.N. 489, 515. EFAA provides:

> [I]n any case in which ... funds are received by a depository institution by wire transfer for deposit in an account at such institution, such cash or funds shall be available for withdrawal not later than the business day after the business day on which such cash is deposited or such funds are received for deposit.

12 U.S.C. § 4002(a)(1)(B). The Act specifically provides that banks are civilly liable to individuals damaged as a result of an EFAA violation. 12 U.S.C. § 4010(a). A civil action may be brought "within one year after the date of the occurrence of the violation involved." 12 U.S.C. § 4010(d).

Therefore, under EFAA, the Bank should have deposited the $4,200 from the wire transfer into Beffa's account no later than the next business day after December 9, 1993. Although the Bank deposited the funds on December 9, 1993, it deposited them into the wrong account. As a result of his inquiries at the Bank and his review of his bank statements, Beffa knew by late January 1994 that the funds had not been deposited into his account.

Both parties agree that the "occurrence" in this case is the Bank's failure to credit Beffa's account no later than the next business day following its receipt of the funds. Using this date, under EFAA, the statute of limitations would have expired in mid-December 1994, long before the November 1995 filing of this complaint. The Bank moved for summary judgment, asserting that Beffa's EFAA claim was untimely. In response, Beffa argued that the statute of limitations should be tolled until March 1995, the time at which he allegedly learned that the Bank was at fault for the breakdown in the transfer. The district court noted that EFAA does not contain an express notice provision and declined to recognize any implied notice requirement. Additionally, the court held that even if notice were required under EFAA, Beffa had the requisite notice by January 1994. At that time, Beffa believed that Seltec had wired the funds, and he knew that the funds had not been deposited into his account. As a result, the district court concluded that Beffa "could have easily ascertained at that time that the Bank erred" and granted summary judgment for the Bank on the EFAA claim. We review the district court's grant of summary judgment *de novo*, *Federal Election Comm'n v. Williams*, 104 F.3d 237, 239 (9th Cir.1996), and affirm.

Beffa urges us to read a notice provision into the EFAA statute of limitations and to toll the limitations period until the time at which he learned of the Bank's EFAA violation. However, even if we were to hold that the EFAA statute of limitations is tolled until the plaintiff receives notice of a violation, Beffa's claim would still fail. Federal courts apply the doctrine of equitable tolling only sparingly, especially in cases in which plaintiffs fail to exercise due diligence

in preserving their legal rights. *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). Under the facts of this case, Beffa cannot demonstrate that he exercised due diligence in pursuing his claim. Beffa admits that, by late January 1994, he was in contact with Seltec and believed that they had initiated the transaction. After his inquiries at the Bank showed that the anticipated transfer had not been credited to his account, Beffa possessed sufficient information to put him on constructive notice of the EFAA violation. That Beffa chose to blame the Romanian banking system for the error, rather than seek tracking information or otherwise pursue the matter further, undermines his claim for equitable tolling. Therefore, under any scenario, the statute of limitations for Beffa's EFAA claim would have expired by January 1995 at the very latest, and Beffa's November 1995 complaint is untimely.[2]

## B. Preemption

■ Both parties raise preemption arguments on appeal. Beffa argues that the district court erred in holding that his state law negligence claim (Count I) was preempted by EFAA. The Bank contends that the district court did not extend its preemption ruling far enough and that Beffa's intentional and negligent misrepresentation claims (Counts II, III) should also be considered preempted. We review the district court's decision regarding preemption *de novo*. *Maynard v. City of San Jose*, 37 F.3d 1396, 1405 (9th Cir.1994).

■ Generally, federal legislation preempts state law if there is either legislative intent to preempt or an actual conflict between the provisions. *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984). Section 4007(b) of EFAA provides that the Act "shall supersede any provision of the law of any State ... which is inconsistent with this chapter." 12 U.S.C. § 4007(b). The preemptive scope of EFAA described in § 4007 and the relevant portions of Regulation CC, 12 C.F.R. § 229.20, is quite narrow. Only state laws that establish different timing or disclosure requirements than EFAA or otherwise directly conflict with EFAA face preemption. Congress expressed no desire to preempt state laws or causes of action that supplement, rather than contradict, EFAA.

■ The district court held that Beffa's negligence claim (Count I) was preempted by EFAA since the complaint alleged negligence in "receiving, processing, depositing, and accounting of the wire transfer funds," actions which the district court found to be covered under EFAA. Clearly, EFAA preempts state law pertaining to the timing of availability of deposited funds. Beffa's negligence claim, however, addresses a separate wrong, negligent deposit to the wrong account. There is no indication of legislative intent suggesting that EFAA was designed to preempt claims of negligent deposit to the wrong account, and such claims are not inconsistent with the purposes of EFAA. The district court's rul-

**2.** We note that Beffa's predicament does not resemble the problem that EFAA is designed to prevent. Congress enacted EFAA in 1987 to quicken the pace at which deposited funds become available to bank customers, not to protect against placement of funds in the wrong account. The Senate Report on EFAA describes the all-too-common scenario that the statute is designed to prevent:

The typical situation that brought this issue to the Committee's attention occurs when a person deposits a check, waits a few days, and then writes several checks to pay some bills-only to have those checks returned as unpayable because of "uncollected funds." The person immediately calls the bank to find out why the checks have bounced and is told that the check that was deposited to cover those amounts-sometimes a paycheck or a Social Security check-has not cleared yet. Often the

depositor is shocked to discover that the bank routinely takes a week to clear a check drawn on a bank located in the same state and two weeks to clear a check drawn on an out-of-state bank.

S. Rep. No. 100–19, at 25–26 (1987), *reprinted in* 1987 U.S.C.C.A.N. 489, 515–16; *see also Bank One Chicago, N.A. v. Midwest Bank & Trust Co.*, 516 U.S. 264, 266, 116 S.Ct. 637, 133 L.Ed.2d 635 (1996) (describing EFAA as "designed to accelerate the availability of funds to bank depositors and to improve the Nation's check payment system").

Nonetheless, EFAA does not expressly limit itself to situations where a bank posts funds to an account a day or two late; it would also seem to apply, in a case such as this, where funds are never posted at all. Thus, Beffa did state a claim, albeit an untimely one, under EFAA.

ing that Beffa's negligence claim is preempted by EFAA must be reversed.

We affirm the district court's holding that Beffa's intentional and negligent misrepresentation claims (Counts II, III) are not preempted because they are based on the Bank's representations to Beffa that it had not received the funds. These claims involve elements that are beyond the scope of EFAA. While EFAA governs a bank's actions in making deposited funds available to its customers, it does not cover erroneous representations by the bank concerning the status of a transaction.

## CONCLUSION

The district court's decisions regarding Beffa's EFAA claim (Count IV) and his negligent and intentional misrepresentation claims (Counts II, III) are AFFIRMED. However, the district court's holding on Beffa's negligence claim (Count I) must be REVERSED. This case is REMANDED to the district court for further proceedings consistent with this ruling.