# United States Court of Appeals
## For the First Circuit

No. 11-2257

ARESTY INTERNATIONAL LAW FIRM, P.C.,

Plaintiff, Appellant,

v.

CITIBANK, N.A.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, U.S. District Judge]

Before

Boudin, Circuit Judge,
Souter, Associate Justice,[*]
and Thompson, Circuit Judge.

James T. Hargrove, with whom Deutsch, Williams, Brooks, DeRensis & Holland, P.C., were on brief, for appellant.
John A. Houlihan, with whom Elizabeth H. Kelly and Edwards Wildman Palmer LLP were on brief, for appellee.

April 27, 2012

[*] The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**THOMPSON, Circuit Judge.**    Aresty International Law Firm deposited a check for $197,750.00 from a Citibank[1]-held account into a Citizens Bank[2]-held account, received clearance to transfer the funds from Citizens soon after, and instructed Citizens to wire the funds from the account.  Citizens did so, only to find later that the check had been fraudulent.  Citizens sued Aresty and ended up with a judgment for a bit less than the amount of the check.  Aresty now looks to hold Citibank liable for the lost funds because of its alleged failure to abide by certain provisions of federal and state law.  Agreeing with the district judge that Aresty's federal claim came too late and cannot benefit from equitable tolling, and that its state claim is preempted by federal law, we affirm the judge's dismissal of the complaint.

Because this case comes to us on appeal from a dismissal under Rule 12(b)(6), we present the facts as alleged in the complaint.

Aresty, a Massachusetts law firm and professional corporation, received a check purportedly from Irwin International Global Trade & Logistics, which Aresty thought was a customer of one of its clients.  The check apparently authorized the withdrawal of $197,750.00 from a Citibank account.

---

[1] Citibank is "Citibank, N.A." officially but just "Citibank" here for convenience.

[2] Citizens Bank is "RBS Citizens, N.A." officially but just "Citizens" for the remainder of this opinion, again for convenience.

On "30, 2007" — apparently October 30, 2007 — Aresty deposited the check in an Interest-on-Lawyers-Trust-Account (commonly called an IOLTA account) it maintained with Citizens. Citizens presented the check to Citibank, which received it "no later than November 1, 2007." On November 2, 2007, Aresty was "assured" by Citizens that it "could wire the funds" from the check "without liability for dishonor or loss of any nature" and therefore "instructed Citizens to wire the funds."

Citibank, however, "elected not to pay the check," instead returning it to Citizens unpaid and marked with the words "Sent Wrong."

Having wired the funds represented by the check, Citizens went after Aresty for the missing money. It charged back the amount of the check to Aresty's accounts and, on January 26, 2009, filed suit in U.S. District Court in Massachusetts.

Over a year and a half later, on October 29, 2010, Aresty filed this suit against Citibank.[3] Aresty claimed first that Citibank had violated 12 C.F.R. § 229.33 (part of "Regulation CC," which we will refer to using that shorthand from now on) by failing to notify Citizens in a timely manner that it would not honor the check, and second that Citibank had negligently breached a duty it

_____

[3] It is not clear why neither Aresty nor Citizens brought Citibank in as a party to the original case.

owed Aresty under Regulation CC.[4]  Citibank responded with a motion to dismiss the complaint, alleging that the entire complaint was time-barred and that the negligence claim was preempted by federal law and barred by the economic loss doctrine.  Aresty fought the preemption and economic-loss arguments on legal grounds, among other things trying to spin the negligence claim as one under the Uniform Commercial Code ("UCC"),[5] but acknowledged the applicable deadlines and asked that they be equitably tolled.

None of this went well for Aresty.  In the present case, the district judge granted Citibank's dismissal motion on September 29, 2011.  The judge said that Aresty plainly knew the check had been dishonored within days of its deposit and well before Aresty filed suit against Citibank, and therefore that Aresty had not been sufficiently diligent to warrant tolling.  The judge then rejected Aresty's negligence claim on the grounds that Regulation CC does not impose any duty for state-tort-law purposes, that any duty it does impose is to a bank on the receiving end of check funds but not to that bank's customers, and, finally, that any state law

_____

[4] Regulation CC is part of the implementation of the Expedited Funds Availability Act (EFAA), 12 U.S.C. §§ 4001-4010, by the Board of Governors of the Federal Reserve System.  The regulation requires a paying bank that "determines not to pay a check in the amount of $2,500 or more" to "provide notice of nonpayment" to a receiving bank within two business days, among other requirements.

[5] Chapter 106, section 4-202 of the Massachusetts General Laws — part of Massachusetts's enactment of the UCC — requires banks to "exercise ordinary care in . . . sending notice of dishonor or nonpayment" of a check.

claim is preempted by federal law. As for the separate suit by Citizens against Aresty, on November 16, 2011, it ended in an agreed-upon judgment against Aresty for $192,334.91.

Aresty has appealed the dismissal of its case against Citibank, reprising its arguments that the limitations period should be equitably tolled and that the negligence claim — now definitively labeled as one under the UCC — survives Citibank's various legal assaults. We will address the arguments, sticking mostly to the material in the complaint but occasionally noting facts argued by the parties (none of which we rely on in the end).

## Equitable Tolling

The first hurdle Aresty must overcome is the seemingly time-barred nature of its federal claim. Summed up briefly, Aresty's claim is that Citibank is liable for the amount lost in the wire transfer because Regulation CC required Citibank to notify Citizens within two business days that it would not honor the fraudulent check. Had Citibank complied with Regulation CC, Aresty claims, Citizens could have halted the wire transfer. But suits under Regulation CC "shall be brought within one year after the date of the occurrence of the violation involved," 12 C.F.R. § 229.38(g), and Aresty did not meet this deadline. Nevertheless, Aresty argues that the district court should have equitably tolled its claim because the one-year filing period had already passed

before Aresty discovered that Citizens would hold it liable for the lost funds.

To begin, we review a district court's decision to grant or deny equitable relief only for abuse of discretion. Ortega Candelaria v. Orthobiologics, LLC, 661 F.3d 675, 678 (1st Cir. 2011). This deferential standard applies even if the district court granted or denied relief when ruling on a motion that would otherwise warrant de novo review. See id. Tolling is a form of equitable relief that temporarily suspends a statute of limitations for a period in which the plaintiff demonstrates that, "'in the exercise of reasonable diligence, [he] could not have discovered information essential to [his claim].'"[6] Ramirez-Carlo v. United States, 496 F.3d 41, 48 n.3 (1st Cir. 2007) (quoting Gonzalez v. United States, 284 F.3d 281, 291 (1st Cir. 2002)). "We apply equitable tolling on a case-by-case basis, avoiding mechanical

------

[6] Aresty and Citibank disagree about whether the time to file suit set forth in Regulation CC is a limitations period or a repose period. A limitations period "normally begins to run at the point of accrual of the plaintiff's claim" and "may be interrupted and postponed by such phenomena as estoppel or tolling"; in contrast, "a repose period is fixed and its expiration will not be delayed by estoppel or tolling." 4 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1056, at 239, 240 (3d ed. 2002). If Regulation CC establishes a repose period then Aresty cannot invoke equitable tolling. See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 363 (1991). But because we ultimately decide that Aresty's claim is time-barred even if the time to file were a limitations period and even if we were to apply tolling, we need not resolve this issue. Cf. Jobe v. I.N.S., 238 F.3d 96, 100-01 (1st Cir. 2001) (declining to decide whether equitable tolling may apply to an immigration statute because the petitioner's claim would not merit tolling in any event).

rules and favoring flexibility." Ortega Candelaria, 661 F.3d at 680. However, we invoke tolling sparingly; only particularly extraordinary circumstances beyond the plaintiff's control can justify ignoring an otherwise clear time limitation. See Irwin v. Dep't of Vets. Affairs, 498 U.S. 89, 96 (1990) ("Federal courts have typically extended equitable relief only sparingly."); Ortega Candelaria, 661 F.3d at 680 ("The tolling proponent must establish that extraordinary circumstances beyond his control prevented a timely filing or that he was materially misled into missing the deadline."); Neverson v. Farquharson, 366 F.3d 32, 40 (1st Cir. 2004) ("The doctrine of equitable tolling [applies] in exceptional circumstances . . . .").

Even if we grant Aresty the lofty benefit of tolling, its federal claim is still time-barred. Citizens sued Aresty to recover the lost funds on January 26, 2009. Aresty was then on notice of its potential liability for the lost funds, and reason dictates that the limitations period should begin on that date at the latest. Aresty might not have known then whether Citizens's claim had merit, but one year was plenty of time to probe its liability and use its evaluation to decide whether it should sue Citibank. Despite all this time, Aresty did not sue Citibank until October 29, 2010, and it has provided only a vague and unpersuasive

explanation for why it waited so long.[7]  Thus, because Aresty sat
on its metaphorical hands for another twenty-one months past the
date when it discovered its potential liability for the wired
funds, even equitable tolling cannot save its claim under
Regulation CC.[8]

## Preemption

Aresty presents several arguments in an attempt to save its
state claim, but we will begin and end with federal preemption.
Aresty says its state claim survives the EFAA's express preemption
provision because the claim is supplemental to rather than
inconsistent with the EFAA.  Considering the issue de novo, IOM
Corp. v. Brown Forman Corp., 627 F.3d 440, 446 (1st Cir. 2010), we
disagree.

The EFAA (which, again, is the source of statutory authority
for Regulation CC), provides at 12 U.S.C. § 4007(b) that its terms
and regulations "shall supersede any provision of the law of any
State, including the Uniform Commercial Code as in effect in such
State, which is inconsistent with this chapter or [its]

_____

[7] In its opposition to Citibank's motion to dismiss below,
Aresty claimed that tolling to October 18, 2010 would be
appropriate because that was the date when it "first learned of the
efforts undertaken by Citizens to recover the funds represented by
the check."  But Citizens sued Aresty twenty-one months before that
date, and Aresty does not explain why the filing of the suit did
not provide notice of Citizens's efforts.

[8] Because Aresty did not timely file its federal claim, we do
not have occasion to consider the claim on the merits.

regulations." See also 12 C.F.R. § 229.41 (providing that EFAA regulations supersede any inconsistent state law). Section 4007(a) creates only one exception to this express preemption provision: "[a]ny law or regulation of any State" may survive if it "requires that funds deposited or received for deposit . . . be made available for withdrawal in a shorter period of time" than the EFAA calls for; Aresty does not argue that this exception applies here.

Instead, Aresty argues that Regulation CC imposes a duty enforceable via a "supplemental" claim under state tort law. However, Aresty's purported state claim is not actually supplemental to but instead entirely dependent on Regulation CC: Aresty refers either to Regulation CC or to Citibank's failure to notify Citizens of nonpayment (the exact omission that Regulation CC addresses) in every relevant paragraph of its state-law claim. The claim is in fact nothing more than a transparent attempt to bypass Regulation CC's limitation on Aresty's time to file suit.[9]

Indeed, Aresty's attempt to bypass Regulation CC's time limit highlights the inconsistency between Regulation CC and Aresty's state-law claim: Massachusetts law provides a significantly longer filing period than federal law does. Compare 12 C.F.R. § 229.38(g) (one year) with Mass. Gen. Laws ch. 106, § 4-111 (three years) and

---

[9] Aresty does argue that its state negligence claim is founded on a breach of some broader duty than the ones prescribed by the EFAA; however, it does not say in either its complaint or its brief how Citibank might have breached any other identifiable duty.

Mass. Gen. Laws ch. 260, § 2A (three years).  The district court therefore disposed of this claim using plain language that we explicitly endorse: where a state-law negligence claim is based on the breach of a duty established by the EFAA, "[p]ermitting an action for negligence to be brought under general state-law tort principles and within time limits set by state law would expand the remedies possible against banks and thus would be inconsistent with the limitations provided in federal law."  This reasoning applies with equal force whether Aresty frames its claim as common-law negligence or negligence under the UCC.  Either way, the inconsistency pointed out by the district court brings Aresty's state-law claim squarely within the terms of the EFAA's express preemption provision and therefore is fatal to the claim.[10]  See 12 U.S.C. § 4007(b).  And because the state-law claim fails on preemption grounds, we need not and do not consider Aresty's other arguments.

---

[10] The cases Aresty cites also support our holding that the state-law claim here is preempted because it is (1) based on the EFAA and Regulation CC but (2) inconsistent with them in that it would allow Aresty to avoid some of their limitations.  See, e.g., NBT Bank, N.A. v. First Nat. Cmty. Bank, 393 F.3d 404, 417 (3d Cir. 2004) (holding that a plaintiff cannot avoid Regulation CC's limitation on damages "merely by characterizing its claim as an effort to hold [a defendant bank] accountable under the UCC"); Beffa v. Bank of the West, 152 F.3d 1174, 1177-78 (9th Cir. 1998) (holding that the plaintiff's negligence claims were not preempted because they were not based on the EFAA but instead "addresse[d] a separate wrong, negligent deposit to the wrong account . . . [and] involve[d] elements that are beyond the scope of [the] EFAA" — specifically, "erroneous representations by the bank").

Apparently the scam Aresty succumbed to is very sophisticated and difficult to detect until it is too late. And we do not downplay in the slightest the significant dent this scam made in Aresty's finances. Nevertheless, because Aresty has not shown that the district court abused its discretion in declining to find Aresty's federal claim timely on equitable-tolling grounds, and because Aresty's state claim is preempted by federal law, we affirm the dismissal of Aresty's complaint. **So ordered.**