# United States Court of Appeals
## For the First Circuit

No. 24-1404

EMIGRANT RESIDENTIAL, LLC,

Plaintiff, Appellee,

v.

LINDA S. PINTI,

Defendant, Appellant,

LESLEY R. PHILLIPS; ANY AND ALL OCCUPANTS,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Montecalvo, Lynch, and Kayatta, Circuit Judges.

Eric E. Renner, with whom Duffy & Sweeney, Ltd., was on brief, for appellant.

Brian C. Linehan, with whom Reneau J. Longoria and Doonan, Graves & Longoria, LLC were on brief, for appellee.

April 11, 2025

**LYNCH**, **Circuit Judge**.  After long-running battles in the Massachusetts state and federal courts arising from a 2009 default on mortgage payments, this appeal arrives in a case we will call Pinti III.  This time we affirm the entry of judgment for Emigrant Residential, LLC ("Emigrant"), which struck a recorded discharge of a mortgage mistakenly given by Emigrant Mortgage Company (EMC), a related entity.  We also affirm entry of judgment against the counterclaims brought by appellant Linda Pinti.

**I.**

We recount the facts of this appeal in the light most favorable to Pinti and draw all reasonable inferences in Pinti's favor.  See Universal Trading & Inv. Co. v. Bureau for Representing Ukrainian Ints. in Int'l & Foreign Cts., 87 F.4th 62, 65-66 (1st Cir. 2023).  We review a grant of a motion for summary judgment de novo, affirming the grant if the record "presents no genuine issue as to any material fact and reflects the movant's entitlement to judgment as a matter of law."  Mullane v. U.S. Dep't of Just., 113 F.4th 123, 130 (1st Cir. 2024) (quoting McKenney v. Mangino, 873 F.3d 75, 80 (1st Cir. 2017)).  In doing so, we "must ignore conclusory allegations, improbable inferences, and unsupported speculation."  Viscito v. Nat'l Plan. Corp., 34 F.4th 78, 83 (1st Cir. 2022) (quoting Garcia-Garcia v. Costco Wholesale Corp., 878 F.3d 411, 417 (1st Cir. 2017)).

In 1982, Lesley Phillips purchased an apartment located at 1643 Cambridge Street in Cambridge, Massachusetts, assuming a preexisting mortgage with a balance of roughly $40,000. Pinti, Phillips's spouse, lived with Phillips at the property from 1987 onwards and was added to the deed in 2005. As part of refinancing a 2005 home equity loan, on March 13, 2008, Pinti and Phillips executed and delivered a promissory note to EMC for $160,000 (the "Note"). Pinti and Phillips mortgaged the property to EMC to secure the note and the mortgage was recorded (the "Mortgage"). On August 1, 2009, Pinti and Phillips defaulted on the Note by failing to make payments. On September 29, 2009, EMC sent Pinti and Phillips a 90-day notice of right to cure.

Various transactions are relevant between Emigrant affiliates and Federal Home Loan Bank of New York ("FHLBNY"). In December 1999, Emigrant's parent company, Emigrant Savings Bank ("Emigrant Bank"), entered into an Advances, Collateral Pledge and Security Agreement (the "Advances Agreement") with FHLBNY. The Advances Agreement provided, inter alia, that as security for loans that FHLBNY may advance to Emigrant Bank, Emigrant Bank "hereby assigns, transfers, and pledges to [FHLBNY], and grants to [FHLBNY] a security interest in all of the Capital Stock, Mortgage Collateral, Securities Collateral and Other Collateral." The Advances Agreement defined Mortgage Collateral as including "first

- 3 -

mortgages and deeds of trust . . . and all notes, bonds or other instruments evidencing loans secured thereby."

On April 17, 2008, about a month after the execution of the Note and Mortgage, ESB-MH Holdings, LLC (of which Emigrant, the appellant, is the successor-by-merger), Emigrant Bank, and FHLBNY executed a Subsidiary/Affiliate Collateral Pledge and Security Agreement (the "Pledge Agreement"). The Pledge Agreement provided that ESB-MH "assigns, transfers, and pledges to [FHLBNY] and grants [FHLBNY] a security interest in" certain specified collateral. That collateral also constituted "Collateral for all purposes under the Advances Agreement," and the Pledge Agreement established that "in addition to any rights or duties with respect to the [collateral] otherwise expressly created by this Pledge Agreement," FHLBNY and ESB-MH "shall have the same rights and duties with respect to the [collateral] as . . . with respect to Collateral under the Advances Agreement." The Pledge Agreement required ESB-MH, inter alia, to deliver the collateral to FHLBNY on demand.

On August 4, 2009, FHLBNY demanded that Emigrant Bank deliver the collateral to FHLBNY. FHLBNY informed Emigrant Bank that it had "moved Emigrant [Bank] to the Listing & Segregation II collateral category for all its mortgage collateral" and referred Emigrant Bank to FHLBNY's Members Product Guide and an attached Delivery of Mortgage Collateral Procedures document. The Listing

- 4 -

& Segregation II category imposed on Emigrant Bank and ESB-MH certain requirements for maintaining collateral, including endorsing each promissory note in blank and preparing individual mortgage assignments to FHLBNY in recordable form. ESB-MH was also required to stamp loan files as assigned to FHLBNY and maintain the files in a separate vault or storage area marked "Federal Home Loan Bank of New York." Between roughly November 2009 and January 2010, ESB-MH prepared mortgage assignments and note allonges for mortgage collateral pledged or to be pledged as security for loans from FHLBNY.

More specifically, as to Pinti's Note and Mortgage, on November 30, 2009, EMC assigned the Mortgage to ESB-MH. At the same time, ESB-MH endorsed the Note in blank and executed another assignment of the Mortgage to FHLBNY. EMC never physically delivered that assignment to FHLBNY, but Pinti argues, and Emigrant disputes, that the assignment was delivered in 2009 based on the terms of the Advances Agreement and the Pledge Agreement.

On December 28, 2009, the Notice of Right to Cure expired, and EMC initiated foreclosure proceedings on the property. Between 2010 and February 2011, Pinti filed for Chapter 7 bankruptcy and obtained a discharge. On August 22, 2011, EMC issued a written response to a Qualified Written Request from Pinti and Phillips, stating that ESB-MH was the owner of the loan and EMC was the servicer of the loan. EMC further stated that the

assignment transferring ownership of the Note and Mortgage to ESB-MH had not been recorded and that the Note, Mortgage, and assignment were in EMC's possession.

EMC proceeded with a foreclosure sale and sold the property to Harold Wilion on August 9, 2012. EMC recorded the foreclosure deed. Joel Marcano, EMC's assistant treasurer, attested that under "EMC's established loan servicing policies and procedures, upon receipt of the foreclosure sale proceeds from a third[-]party purchaser following a foreclosure sale, EMC's loan servicing department is to prepare a Memorandum" to EMC's loan payoff department. The memorandum advises the loan payoff department "of the amount of funds received, confirming that the funds were received following a foreclosure sale to a third party and, accordingly, instructing the department that a Discharge of Mortgage should not be prepared and sent to the foreclosed borrower." Moreover, Marcano attested that "[n]either EMC nor Emigrant have ever had a policy of preparing or otherwise providing a Discharge of Mortgage to a borrower upon receiving proceeds from a third-party purchaser following a foreclosure sale."

On September 18, 2012, an EMC employee named Anna Sorvillo prepared a memorandum for another EMC employee attaching Wilion's check from the foreclosure sale and identifying the check as "the amount of a Third Party Sale to payoff this loan." The memorandum requested that the recipient credit $48,289.92 to an

account for "Legal, RESPA and appraisal" and provide another EMC employee with "a copy of the credit advice." On October 3, 2012, Peter Koys, a Vice President at EMC, prepared a discharge of the Pinti mortgage (the "Discharge"). EMC sent the Discharge to Pinti and, in an accompanying letter, instructed her that "it is [in] your best interests to record the Discharge and accompanying documentation as soon as possible." At no point did EMC or Emigrant return the Note to Pinti or otherwise cancel it.

**State Court Proceedings**

On October 29, 2012, Wilion filed a summary process action in Massachusetts state court against Pinti and Phillips for possession of the property. Pinti and Phillips then filed a separate action in state court against Wilion and EMC challenging the foreclosure sale. On July 17, 2015, the Massachusetts Supreme Judicial Court ("SJC") ruled that the foreclosure sale was void because the Notice of Right to Cure did not strictly comply with the Mortgage's notice provisions. See Pinti v. Emigrant Mortg. Co., 33 N.E.3d 1213, 1225-26 (Mass. 2015) ("Pinti I"). EMC returned the foreclosure sale proceeds to Wilion. On July 29, 2015, shortly after the Pinti I decision, Pinti and Phillips recorded the Discharge. Pinti and Phillips did not make any further mortgage payments and have not exercised their right of redemption in the property by satisfying the total debt owed on

- 7 -

the loan.  Pinti has continued to pay taxes, insurance, and condominium fees.

## First Federal Court Proceeding

On June 17, 2016, EMC brought an action in diversity against Pinti and Phillips in Massachusetts federal district court seeking, inter alia, a judgment striking the Discharge from title to the property.  See Complaint at 6-7, Emigrant Mortg. Co. v. Pinti, No. 16-cv-11136 (D. Mass. Jan. 17, 2019) ("Pinti II").  Pinti and Phillips counterclaimed for a judgment that they owned the property free of the Mortgage and a claim for negligent infliction of emotional distress.  EMC moved for summary judgment, and the district court allowed the motion with respect to Pinti and Phillips's claim for negligent infliction of emotional distress but otherwise denied it.  The district court held a two-day bench trial and subsequently dismissed the action without prejudice, holding that EMC was not the mortgagee of the loan because the Note had previously been assigned to ESB-MH.  EMC moved for reconsideration, arguing that it did have standing in light of a subservicing agreement authorizing it to commence proceedings on behalf of ESB-MH and requiring it to indemnify ESB-MH.  The district court denied the motion because EMC had not raised the argument at trial, and it stated that in another case "the noteholder . . . could . . . again seek to strike the allegedly mistaken discharge of the mortgage."  Memorandum and Order at 7,

- 8 -

Emigrant Mortg. Co. v. Pinti, No. 16-cv-11136 (D. Mass. Sept. 13, 2019), ECF No. 121.

After this ruling, on September 30, 2019, FHLBNY executed and sent Emigrant an assignment of the Pinti Mortgage in an apparent attempt to solidify Emigrant's ownership of the Mortgage. Emigrant recorded both that assignment and the 2009 assignment the same day. The Note is currently in Emigrant's possession through counsel.

**Second Federal Court Proceeding**

On November 4, 2019, Emigrant filed the instant action on the basis of diversity in Massachusetts federal district court. Pinti and Phillips filed a motion to dismiss, which the district court denied, and Pinti and Phillips then filed various counterclaims against Emigrant. Emigrant moved for summary judgment on all claims, and Pinti and Phillips moved for discovery under Fed. R. Civ. P. 56(d). The district court granted Emigrant's motion for summary judgment and denied Pinti and Phillips's motion for discovery. Pinti and Phillips appealed, and this court affirmed in part and reversed in part, vacating the order granting the motion for summary judgment and remanding the case for supplemental briefing and limited discovery regarding "the chain of custody and authenticity of the Note" and "the 2019 assignments." See Emigrant Residential LLC v. Pinti, 37 F.4th 717, 726-28 (1st Cir. 2022).

On remand and following the additional discovery, the district court "decided the summary judgment motion . . . anew" and held in favor of Emigrant.  See Emigrant Residential LLC v. Pinti, 707 F. Supp. 3d 52, 63, 77 (D. Mass. 2023).  The district court first concluded that Emigrant's claim was not barred by the doctrine of res judicata because the Pinti II court had not issued a final judgment on the merits.  The district court held that Emigrant had standing to strike the Discharge as it was both the bearer of the Note and assignee of the Mortgage.

Turning to the merits, the district court held that the "record establishes that the Discharge occurred due to an administrative error" such that it could be set aside.  Id. at 67.  The district court "rel[ied] upon Marcano's sworn statement to conclude that the Discharge was in error" and concluded that Sorvillo's deposition testimony did not create a factual dispute as to that issue.  Id. at 68-69.  The district court also determined that "Emigrant's continued possession of the unreleased Pinti Note is further evidence that the [D]ischarge was unintentional."  Id. at 69.

The district court next held that Emigrant could recover in equity, rejecting Pinti and Phillips's arguments that Emigrant acted with unclean hands, equitable relief was inappropriate because Pinti and Phillips could not be restored to their status quo ante position, Emigrant had perpetrated a fraud on the court,

and a laches defense defeated Emigrant's claim.  As to Pinti and Phillips's counterclaims, the district court held that (1) the applicable statute of limitations barred their claim under Mass. Gen. Laws ch. 93A, (2) their claim for negligent infliction of emotional distress failed on the merits and as a matter of res judicata, and (3) their claim for intentional infliction of emotional distress failed on the merits and was precluded. Phillips subsequently passed away, and Pinti's counsel filed a suggestion of death on April 22, 2024.

On appeal, Pinti contests only the district court's determinations as to standing, Emigrant's claim to strike the Discharge, unclean hands, restoration to the status quo, and Pinti's Chapter 93A claim.

**II.**

**A.  Standing**

Pinti's lead argument on appeal that Emigrant lacks standing to challenge the Discharge is flatly wrong.  The record establishes that Emigrant is the holder of the Note.  That is more than enough to give it standing under Article III.[1]  See, e.g., TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (holding that plaintiffs in federal court must show "an injury in fact that is

---

[1] This holding is consistent with Pinti II, which held that EMC (as opposed to Emigrant) was not the holder of the Note at the time of that litigation and that EMC had assigned the Note to ESB-MH (Emigrant's predecessor) in 2009.

- 11 -

concrete, particularized, and actual or imminent," "likely caused by the defendant," and that "would likely be redressed by judicial relief" (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992))). Pinti inappropriately relies on inapposite Massachusetts law about parties seeking to foreclose, which is not the issue here.[2] See U.S. Bank Nat'l Ass'n v. Ibanez, 941 N.E.2d 40, 50-51 (Mass. 2011); Eaton v. Fed. Nat'l Mortg. Ass'n, 969 N.E.2d 1118, 1121 (Mass. 2012). As we held in Fustolo v. Select Portfolio Servicing, Inc., 123 F.4th 528 (1st Cir. 2024), possessing a mortgage note that has been indorsed in blank creates an interest in the mortgaged property under Massachusetts law. Id. at 532; see also Mass. Gen. Laws ch. 106, § 3-205(b) (2024). Massachusetts courts have further explained that a mortgage note includes an equitable interest in the mortgage, even when the noteholder does not also hold the mortgage itself. See Ibanez, 941 N.E.2d at 54 (holding that a noteholder "has an equitable right to obtain an assignment of the mortgage, which may be accomplished by filing an action in court and obtaining an equitable order of assignment"); Eaton, 969 N.E.2d at 1125 (holding that a party

---

[2] The Pinti II court declined to consider whether Massachusetts law imposes different standing requirements on parties seeking to strike a discharge and parties seeking to foreclose because "Emigrant did not before or at trial argue that Massachusetts law is different [from foreclosure by entry] with regard to a request to strike the discharge of a mortgage." In this action, Emigrant raised the argument both before the district court and on appeal, and we address it accordingly.

holding a mortgage "no doubt holds the same in trust for the party owning the [note]" (citation omitted)). Because Emigrant did not need to hold both the Mortgage and the Note to have standing, we need not reach the issues of whether the Mortgage was delivered to FHLBNY in 2009 and, if so, whether the 2019 post-Discharge assignment validly assigned the Mortgage to Emigrant.[3]

## B.  The District Court Correctly Struck the Mistaken Discharge

Under Massachusetts law, "[i]t is the general rule that, where a mortgage has been discharged by mistake, equity will set the discharge aside and reinstate the mortgage to the position the parties intended it to occupy, where the rights of intervening lienors have not been affected." E. Bos. Sav. Bank v. Ogan, 701 N.E.2d 331, 328 (Mass. 1998) (quoting N. Easton Coop. Bank v. MacLean, 15 N.E.2d 241, 245 (Mass. 1938)).  No genuine material dispute of fact exists here that the Discharge occurred in error. The record demonstrates that neither EMC nor Emigrant had a policy of discharging mortgages to a borrower upon receiving proceeds from a third-party purchaser after a foreclosure sale; rather,

---

[3] Emigrant has standing even assuming in Pinti's favor that (1) the mortgage was delivered to FHLBNY in 2009 and (2) Massachusetts law requires Emigrant to have some further interest in the Mortgage in addition to holding the Note to bring this action.  FHLBNY assigned the mortgage back to Emigrant in 2019, and the SJC has found that holding a post-discharge assignment of the mortgage and the note creates standing for an action challenging a discharge as mistaken.  See Gleason v. Dorney, 127 N.E.2d 184, 184 (Mass. 1955).

- 13 -

EMC's policy was to prepare a memorandum informing the loan payoff department that the funds had been received in a foreclosure sale and that a discharge should <u>not</u> be prepared and sent to the foreclosed-on party. As Marcano attested, the Discharge occurred by mistake after Sorvillo's memo "through inadvertent error and/or omission . . . did not indicate that the funds were received pursuant to a foreclosure sale to a third party purchaser, as opposed to an entity related to Emigrant or EMC," and thus "failed to properly inform [the relevant EMC employee] that a Discharge of Mortgage should not be prepared and sent to [Pinti and Phillips.]" Sorvillo likewise testified that her memorandum could have been the basis for a mistaken discharge if the recipient misunderstood what she meant by "third-party sale payoff."

It is also undisputed that EMC and Emigrant never returned the Note to Pinti or otherwise canceled it, further evidence that there was no intention to discharge the loan (even if, as Pinti contends, returning the Note was not required to effect a discharge).[4] Additional evidence that a mistake took place includes the fact that the Discharge identified EMC as the holder of the mortgage, even though EMC had assigned the mortgage

---

[4] Moreover, the record does not indicate any basis for the Discharge besides error (for example, it is undisputed that Pinti and Phillips had not paid off the loan in full), and Pinti does not contend that there was one.

- 14 -

to ESB-MH in 2009.  On this record, no reasonable jury could conclude otherwise than the Discharge was a mistake.

Pinti focuses on attacking the admissibility of the Marcano affidavit.  It was clearly admissible for purposes of considering a motion for summary judgment under Rule 56(e)(4). See Melino v. Bos. Med. Ctr., 127 F.4th 391, 396-97 (1st Cir. 2025) (district court's decision whether or not to strike evidence from the summary judgment record reviewed for abuse of discretion). Pinti mistakenly argues that Marcano's testimony is not based on his personal knowledge and is inadmissible under Fed. R. Evid. 602.  On the contrary, Marcano's affidavit establishes that his testimony is based on his personal experience as Assistant Treasurer at EMC (a position that he held at the time of the Discharge), and "upon . . . review of the servicing records for the subject property, which records were made and maintained in the regular or ordinary course of business of EMC, as the authorized servicer acting on behalf of [Emigrant]."  Marcano "work[s] in the Foreclosure Bankruptcy Department" and "oversee[s] a portfolio of loans that are in foreclosure or bankruptcy," including the Pinti loan.  Marcano had knowledge of Emigrant's policies and practices with regards to handling foreclosure sale proceeds and discharges, since EMC acted as Emigrant's loan servicer at the time of the discharge.  See R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 187 (1st Cir. 2006) ("Typically, a

- 15 -

mortgage servicer acts as the agent of the mortgagee to effect collection of payments on the mortgage loan.").

Pinti also argues that paragraphs 18-19 and 23-27 of the affidavit are inadmissible hearsay "as they were offered to prove the contents of the original records." See Fed. R. Civ. P. 602. The argument is inaccurate. Paragraphs 18-19 refer to "policies and procedures," not written records, and paragraphs 23-27 referred to and attached Sorvillo's memorandum. See Trailways of New England, Inc. v. Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps., 343 F.2d 815, 818 (1st Cir. 1965) (holding that reliance on affidavit presented with business records was appropriate).[5]

Pinti's argument fares no better that Marcano's affidavit conflicts with Sorvillo's deposition testimony. It does not. As the district court correctly noted, Marcano's affidavit speaks not to whether Sorvillo subjectively believes that she made a mistake but whether EMC issued the discharge in error. Pinti also misleadingly cites to a section of Sorvillo's deposition testimony discussing a memorandum separate from the September 2012

---

[5] Pinti also argues that Marcano's testimony violates the best evidence rule and that it falls within the scope of the sham-affidavit doctrine. Pinti did not raise these arguments before the district court and has waived them. See Iverson v. City of Bos., 452 F.3d 94, 102 (1st Cir. 2006).

- 16 -

Discharge memorandum.  Moreover, Sorvillo did not, as Pinti claims, testify that there were no policies in place at EMC in 2012 regarding the preparation of such memoranda.  Rather, Sorvillo testified that there were "[p]rocedure[s] or something, yes."  No genuine dispute of material fact exists.

## C.  Emigrant Was Entitled to the Equitable Relief of Striking the Discharge

"[W]e review a district court's decision to grant or deny equitable relief only for abuse of discretion."  Aresty Int'l L. Firm, P.C. v. Citibank, N.A., 677 F.3d 54, 57 (1st Cir. 2012).  Pinti argues that Emigrant was not entitled to equitable relief, asserting that Emigrant sought equity without doing equity and acted with unclean hands.[6]  Pinti did not develop a he-who-seeks-equity-must-do equity argument before the district court, mentioning the maxim only briefly and failing to make any argument under it distinct from the unclean hands issue.  As such, we consider the argument waived.  See McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991) ("Overburdened trial judges cannot be expected to be mind readers.  If claims are merely insinuated rather than actually articulated in the trial court, we

---

[6] The two doctrines are distinct: unclean hands is a complete defense against a party seeking an equitable remedy, whereas the "he who seeks equity must do equity" doctrine provides that a party seeking the enforcement of equitable rights must consent to the defendant receiving any correlative equitable rights arising out of the same subject matter.  See Worthington v. Anderson, 386 F.3d 1314, 1319 (10th Cir. 2004).

will ordinarily refuse to deem them preserved for appellate review.").[7]

"The doctrine of unclean hands denies equitable relief 'to one tainted with the inequitableness or bad faith relative to the matter in which [it] seeks relief.'" Murphy v. Wachovia Bank of Del., N.A., 36 N.E.3d 48, 54 (Mass. App. Ct. 2015) (quoting Fidelity Mgmt. & Rsch. Co. v. Ostrander, 662 N.E.2d 699, 704 (Mass. App. Ct. 1996)). The doctrine "only applies when the claimant's misconduct is directly related to the merits of the controversy between the parties." Travers v. Flight Servs. & Sys., Inc., 808 F.3d 525, 538 (1st Cir. 2015) (quoting Texaco P.R., Inc. v. Dep't of Consumer Affs., 60 F.3d 867, 880 (1st Cir. 1995)). The record supports the district court's conclusion that Emigrant did not act with bad faith or commit intentional misconduct and that Emigrant did not benefit from the Discharge and thereby profit from its own alleged misconduct. The district court also properly considered and rejected the arguments that Emigrant was dilatory in addressing the mistaken Discharge and that Emigrant's purported actions with regards to other mortgage assignments have any bearing on this dispute.

---

[7] Considerations of any contributions by Pinti to the equity in the apartment may well continue to be appropriate for consideration, and nothing in this opinion precludes such consideration.

- 18 -

The district court also noted that Massachusetts law does not preclude rescission even when the court cannot restore the exact status quo ex ante. See May v. SunTrust Mortg., Inc., 7 N.E.3d 1036, 1042 (Mass. 2014) (holding that "strict return to [the] status quo [is] not essential in suit for rescission" (citing J.C. Penney Co. v. Schulte Real Est. Co., 197 N.E. 458, 460 (Mass. 1935))); Levy v. Bendetson, 379 N.E.2d 1121, 1125 (Mass. App. Ct. 1978) (holding that rescission was appropriate even when restoring parties to their original position was "not feasible"). The district court correctly determined that Pinti's litigation expenses do not factor into the analysis. See, e.g., May, 7 N.E.3d at 1042-43 (holding that common law rescission involves undoing the transaction and returning the money and property involved, and not including attorneys' fees as a consideration).

This appeal affirms the order striking the Discharge. Emigrant may well take further steps under Massachusetts law to obtain payment on the debt or to secure possession of the apartment.

## D. Pinti's 93A Counterclaim

Pinti argues that her 93A counterclaim is not time-barred because (1) Pinti only discovered Emigrant's conduct on January 11, 2019 with the district court's Pinti II ruling, and (2) Pinti should be allowed to bring her 93A claim defensively in recoupment and/or setoff. Pinti failed to raise either argument

before the district court and has waived them.  <u>See</u> <u>Iverson</u>, 452 F.3d at 102.

We **<u>affirm</u>** the district court's grant of summary judgment to Emigrant.  No costs are awarded.